## DECEMBER TERM, 1843.

### W. B. YOUNG *v.* ROWLAND SUGGS, *et al.*

A bill filed by a distributee of his father's estate, against the administrator thereof, *dismissed,* upon answer of the administrator and proof, that he had paid over to the regularly appointed guardian of the complainant, his entire distributive portion.

THE bill, filed 16 January, 1838, states, that complainant is the only legitimate surviving child of the marriage of William Young and Elizabeth, now the wife of defendant Suggs, they living separate. Complainant's father died intestate, in Alabama, in 1816, leaving property. Suggs administered, giving bond in $1000, William Barton surety ; personal property ordered to be sold, and appraisers appointed, as shown by exhibit B. Barton removed to Texas, eight or nine years ago, Suggs to Mississippi, about sixteen years ago. Suggs married complainant's mother about 1817, or 1818, and soon after removed to Mississippi ; separation took place ; Suggs failed to comply with his bond, and at sale of property, bought nearly all of it himself, sale amounting to $1263. For this "iniquitous proceeding," Barton "challenged" Suggs to surrender to him at least part of the property he had bought, and the property was surrendered to Barton accordingly. Complainant has often, since the age of twenty-one, demanded his share of his father's estate from Suggs, and it was refused. Prays for full discovery, for an account, and for general relief.

The answer of R. Suggs, filed June 13, 1839, admits his marriage with complainant's mother, and that they separated under articles, about six years ago. Once took out letters of administration on estate of Young, in Alabama territory, gave bond, with Barton surety ; appraisers were appointed, who valued the property at $629. Respondent sold the property, purchased part, does not know precise amount of sales ; it could not have much exceeded valuation. After the sale, respondent believed, and now believes, that the property never belonged to defendant, but was the property of William Rutherford, a former husband of Eliza-

beth, by whom he had an heir named Franklin, who is still living, and was at the time of respondent's administration a minor. Seeing the situation of the property, respondent gave it up to Barton, the brother of the said Elizabeth, and the uncle of Franklin Rutherford and complainant. By direction of the Chief Justice of the Orphans' Court, respondent delivered over to Barton all the effects belonging to the estates of Rutherford and Young ; respondent always understood that Barton was the legal guardian of the said Franklin and complainant. If he had retained all the property in possession of Elizabeth when he married her, it would not have compensated him for his expenses in supporting and educating said Franklin and complainant. But respondent denies that he derived any advantage from the use of the property, and he charges, that complainant is, in good conscience, largely indebted to him for trouble and expense in supporting and educating complainan during infancy, &c.

Supplemental bill filed 6th June, 1840, repeats the allegation of original bill, states the divorce of Suggs and wife, and files exhibit G, decree of divorce. Prays for relief, as before.

The answer to supplemental bill admits the divorce.

The proof was as follows.

Thomas H. Rogers deposes, that, in a conversation with complainant, Suggs admitted that the sale of his father's estate by him amounts to $1100 or $1200, and that complainant ought to have it, but that he, Suggs, ought not to pay it, inasmuch as he had already paid it to Barton. That he, Suggs, had the amount of sale (*witness* understanding him to mean the sale bill).

· William Jolly deposes, that Suggs showed him an inventory of the effects of William Young, deceased, amounting (as deponent thinks) to $1000 or $1100, but being no scholar, he is not confident as to the amount. Witness further says, unequivocally, that the inventory, attached to this deposition, is the one shown him as aforesaid, which inventory, by correct calculation, amounts to $619, the calculation on its face being inaccurate, amounting to $6019. Deponent heard complainant admit, that Barton, instead of Suggs, ought to pay him his share of his father's estate.

Franklin Rutherford deposes, that six or seven years ago, he saw

a letter from William Barton, addressed to Suggs, Elizabeth, and complainant, in which Barton expressed to them his regret at having heard that they entertained suspicions, lest he would never pay complainant his share of his father's estate, and added, that he utterly denied the suspicion, and requested complainant to call on him, and he would pay to the complainant his proportional part of his father's estate. Witness understood from the letter, that Barton was the proper person on whom complainant had his demand.

James C. Choate, proves the same with regard to Barton's letter, and also that complainant consulted with him, as to the policy of sending deponent to Barton for his said share of his father's estate, laying the same out in mules, and thereby making a speculation. Complainant previously told deponent, that his said share was in the hands of Barton.

Thomas Dew deposes, that he is acquainted with the handwriting of William Barton, from having seen him write ; and on examining the receipt attached to this, deponent says, that it is the handwriting of Barton ; said receipt being given by Barton to Suggs, acknowledging the reception by himself, as guardian of complainant, said complainant's share of his father's estate.

The guardian bond of Barton, as guardian to complainant, is filed to prove said guardianship ; this bond was regularly certified, by the clerk of the Orphans' Court, of Marengo county, Alabama, under the seal of the Court.

*R. Huntington,* for complainant.

Suggs, as administrator, paid no regard to his duties, or the court of Alabama, which governed him as such. He fails to discover in his answer, whether or not he acted collusively with Barton ; consequently he tacitly admits that he did. Standing, therefore, so highly obnoxious in equity, and having in law committed a *devastavit,* he should be chargeable with the *maximum* of his admission of the amount of sales with compound interest. The rate of interest in Alabama is eight per cent. Aik. Ala. Dig. 2d Ed. 236.

The complainant is entitled to two thirds of his father's estate,

and his mother to one third.   Aik. Dig. 128.   The complainant is not bound by the act of 1826, which allows to him but one half. ibid. 236.

There is no proof of the alleged *direction* of the Judge of Probate in Alabama to the defendant, to deliver to Barton the property of his intestate ; that order, if ever made, is a matter of record, and should be exhibited.   The doubt. alleged in the answer, as to whom the property that came to the hands of the administrator really belonged, amounts to nothing.   The defendant is *estopped* from denying that it belonged to his intestate, and the complainant is that intestate's distributee.

The pretence that Barton was the lawfully appointed guardian of the complainant seems equally unfounded ; for if he were such, the records of the Orphans' Court in Alabama must show the fact, and they are not relied upon ; the guardian bond on file, is not a record of the court.

Whether, however, Barton, as guardian of complainant, or surety for Suggs on the administration bond, or otherwise, received from Suggs the estate of William Young, the surrender would not exonerate Suggs, as administrator, unless *sanctioned* by an order of the Orphans' Court, and that on the revocation or renunciation *of record*, of the letters of administration to him, of which order, revocation, or renunciation, nothing is seen or shown in this case.

The testimony taken in the cause is not therefore relevant, and if so, it is illegal and inadmissible in its present aspect, being of a *secondary* nature, and establishing by *parol*, what should be proved by records, without laying that preliminary foundation, essential to the introduction of secondary evidence.

*Lea*, for defendant, Rowland Suggs.

1. It is admitted that Rowland Suggs administered on the estate of complainant's father, and would be chargeable, but for the facts which exonerate him from present liability.

2. In exoneration of Rowland Suggs, the following considerations are suggested : — The difficulty, known as matter of history, of obtaining record evidence of administrations in the early times of the

Alabama territory, in the venue of the transactions in question ; and the difficulty of obtaining any evidence as to occurrences more than twenty years before the filing of the bill, the administration having been granted in 1818. But there is evidence enough that William Barton, the guardian of complainant, received whatever he could be entitled to. The bill admits that Barton did receive the property, but pretends that he did so under some claim or demand as surety of the administrator ; but the contrary and true character, in which he received the property, appears unquestionably. It is altogether improbable that the property would have been surrendered on the ground pretended in the bill; and it is equally probable that it would have been surrendered to a guardian, if at all. But we have filed record evidence that Barton was the guardian of complainant ; and the receipt of Barton proved that he received complainant's share, as his guardian, which is fully corroborated and confirmed by the repeated admissions of complainant, without going into the contents of any letter from Barton, which may be adverted to, however, as the occasion and subject of complainant's remarks. This being established, it is not necessary to consider the exaggerations as to the value of the estate, which would appear absurd, if tested by the proved rates of appraisement and the aggregate. Nor is it necessary to seek a credit for the maintenance, &c. of complainant, from three to sixteen years old — he being, by the way, not quite so young as he pretended at the time of filing his bill. Nor is it necessary to dwell on the probable motive of complainant, in seeking to make the husband of his mother, living apart from her, but not far off, and with some property, accountable, rather than resort to his guardian and uncle in Texas, as to whose ability to pay he said he was doubtful, and to whom he might at last resort, if unsuccessful here.

CHANCELLOR. This bill is filed by the complainant for the purpose of recovering a distributive share of the estate of his deceased father, which he alleges came to the hands of the defendant as the administrator of that estate, and for which, it is charged, he has never accounted.

The answer of the defendant admits he was the administrator as

charged, and says that he paid over to the regularly appointed guardian of the complainant his entire share in his father's estate, and exhibits the guardian's receipt to that effect, which is fully proven by the witnesses in the case, who show that the guardian run off to Texas, carrying with him the complainant's patrimony, which seems to fully account for the institution of this suit ; as the testimony shows, that that is the only claim it has to any consideration.    Let the bill be dismissed at the costs of the complainant.