## Case No. 1,137.

BAYERQUE et al. v. SAN FRANCISCO.

[1 McAll. 175.][1]

Circuit Court, D. California. July Term, 1856.

NEGOTIABLE INSTRUMENTS—CITY WARRANTS—PAYMENT FROM PARTICULAR FUND—TRADING CORPORATIONS.

1. A warrant issued by the controller of a city, whose payment is restricted to a particular fund, cannot be regarded as a bill of exchange.

2. Trading corporations may, independently of statute, issue negotiable paper in the course of their business.

3. If admitted in its broadest interpretation, it [this rule] cannot apply to a warrant issued by the officers of a municipal corporation.

4. It [such a warrant] is rather the conditional payment of a debt already created, than the creation of a new one, or the expression of a new promise.

At law. The present action is brought by the plaintiff as holder of certain warrants alleged to have been assigned to him for a valuable consideration. The warrants are in the following form:

"$1,000. City Comptroller's Office, San

---

[1] [Reported by Cutler McAllister, Esq.]

Francisco, ——, 1854. City Treasurer,—Pay to Jesse L. Whitmore, or bearer, the sum of one thousand dollars, for grading &c. Powell street from Washington to Bay, out of the street assessment fund. S. R. Harris, Comptroller."

The facts necessary to be set forth are given in the opinion of the court, on the demurrer filed to the complaint. [Demurrer sustained.]

Parsons & Ganahl, for complainants.
H. H. Byrne, for defendant.

McALLISTER, Circuit Judge. Various grounds of demurrer have been assigned. A consideration of the third and last will dispose of the case on the present pleadings. It is in these words, "That the instruments in law do not constitute any evidence of indebtedness, nor does it appear from the complaint that the defendant is otherwise indebted to plaintiff. Nor do the said instruments establish in law any obligation or liability on the part of the defendant."

The defendant is a municipal corporation, owing its existence to a charter, through which "it moves, and breathes, and has its being." It stands on a different footing from an individual. The latter, may do all acts and enter into all contracts not prohibited by law; the former, created for specific purposes, can make no contract forbidden by its charter, or into which it is not authorized to enter by that instrument. Nor is a corporation, when an action is brought against them on a contract, estopped from denying their competency to make it; for if so, the estoppel would apply equally to the other contracting party, and the limitations upon the power of the corporation would be of no avail. The authority of the city to issue the warrants in this case, is placed upon the third section of its charter. It is in these words. "Every warrant upon the treasury shall be signed by the comptroller, and countersigned by the mayor, and shall specify the appropriation under which it is issued, and the date of the ordinance making the same. It shall also state from what fund and for what purpose, the amount specified is to be paid." It will be observed, that these warrants, in addition to the signatures of the mayor and controller, and a statement from what fund and for what purpose the money was to be paid, must also specify the appropriation under which it is issued, and the date of the ordinance making the same. This cannot be regarded as matter of form. It is a substantial requirement, and inserted to carry out the policy contemplated to be pursued for the protection of the public from the recklessness of city officers, and the collusion with them of third parties. The 7th section of the charter inhibits the common council from issuing or putting in circulation any paper or design as a representative of value or evidence of indebtedness; and the 8th section declares, that no money shall be drawn from the treasury unless the same shall have been previously appropriated to the purpose for which it was drawn; and, with a view to enforce that provision and guard against the infidelity of officers of the corporation, and the fraud of third parties, the existence of the previous appropriation, and the date of it, must be specified in the warrant. In case at bar, while some of the warrants, amounting in the aggregate to $14,500, are issued in conformity to the act, the balance—and by far the larger amount—do not specify the appropriation under which they are made, or issued, or the date of the ordinance making the same. These cannot be deemed to have been legally issued, nor would the treasurer have been authorized to have paid them. They cannot be recovered on as warrants, even in the hands of the original holder. But the plaintiff takes a position, which, if sustainable, covers all the warrants. He sues upon them exclusively. There is but one count in the complaint. He does not sue upon them as agreements setting forth the consideration; but as negotiable, as bills of exchange, which imply a consideration. We do not regard them as such. The defendant is not a private, trading corporation, but a public, municipal one. In the distribution of its powers among its agents, the legislature has interposed a check upon the officer having the custody of the public money, by authorizing him to pay only such warrants as purport on their face to have been issued under some previous appropriation; and the date thereof must be given. None other could lawfully issue. They are merely what they purport to be when legally issued, warrants, or authority to the officer to pay out public money in his custody. They are drawn by one officer of a corporation upon another, and intended rather as a conditional payment of a pre-existing debt already audited, than as instruments creating a new debt, or expressing a new promise. They are designed to give facility, regularity, and security in the disbursement of the public money. They are intended as a check on the treasurer by forbidding any payment unless authorized in a particular manner, and to facilitate the transaction of the business of the corporation by defining strictly the duties of their functionaries. To the holder they are of use, by enabling him to draw money from the treasury when his debt has been allowed by the proper officer; and probably he might compel by mandamus the treasurer to pay the warrants in case, having funds, he refuses. But in no sense do they constitute a promise on the part of the city to pay, as the drawer of a bill of exchange. There are other considerations which conduct to the conclusion that these warrants cannot be treated as bills of exchange. A fatal objection is the fact, that upon their face the payments are restricted to, and must come out of a particular fund. It is true, that the mention of a particular fund out of which a pay-

ment is to be made, will not in some cases prove fatal to the character of the instrument as a bill or note. But it is confined to that class of cases where the mention of a particular fund is directory, and reference made to it with a view simply to enable the drawee to look to his reimbursement. But in all cases where the payment is expressly limited, and is to come out of a specific fund mentioned, however ample it may seem, it is fatal to the character of paper as a bill of exchange. Pars. Merc. Law, 87.

In Dawkes v. De Lorane, 3 Wils. 207, the court thus defines the essential qualities of a bill of exchange, "It must carry with it a personal credit given to the drawer, not confined to credit upon any thing or fund,—it is upon the credit of a person's hand who negotiates it; he who takes it, does so upon no contingency except the failure of the general credit of the person drawing or negotiating it." In Jenney v. Herle, 2 Ld. Raym. 1361, A drew on B, to pay plaintiff on demand a sum of money out of a particular fund mentioned,—held to be a mere appointment for the payment of money out of a particular fund; and where A drew on the agent of a regiment, to pay an amount out of his growing subsistence,—held not to be a bill of exchange, "because the money was payable out of a particular fund." In Yeates v. Groves, 1 Ves. Jr. 280, A drew a bill "payable out of the purchase-money of a house." This order, said the lord chancellor, "is not a bill of exchange, being payable out of a particular fund." In Van Vacter v. Flack, 1 Smedes & M. 393, the plaintiff sued on a bill made payable out of the notes left in drawer's possession. "This instrument," say the court, "is not a bill of exchange, because payable out of a particular fund; it is to be distinguished from that class in which the particular fund is mentioned merely as a direction to the drawee how he may reimburse himself." The case of Kelley v. Mayor, etc., 4 Hill, 263, illustrates the distinction between the two classes of cases. It was there held, that a draft signed by the mayor, and directed to the treasurer, was a bill of exchange. If this be law, it does not touch the case. The payment of the money was not confined to a particular fund. The words as to payment were "and charge to Bedford assessment;" the court say, "The bill was not restricted to the particular fund arising from the Bedford-road transaction, yet for reimbursement the treasurer was directed to charge that fund." On that ground the instrument was considered a bill. The form of the draft in that case was also decided to have complied substantially with the statute. This is unlike the case at bar. In Lake v. Trustees of Williamsburgh, 4 Denio, 520, a draft was drawn for a sum of money to be charged to the account of the Union avenue. The payment was not to come out of any particular fund; and the court say, "If it was not a sealed instrument it per-

haps might be regarded as a bill of exchange." This intimation of a "perhaps" is sustained by a reference to Kelley v. Mayor, etc., 4 Hill, 263. When we turn to the latter case we find the following proposition: "Independently of any statute provision, a corporation may issue negotiable paper for a debt contracted in the course of its proper business." To sustain this proposition reference is made to the case of Moss v. Oakley, 2 Hill, 265; and in this case reliance is placed on the case of Mott v. Hicks, 1 Cow. 513, and to Barker v. Mechanic Fire Ins. Co., 3 Wend. 94. All these cases on which reliance was placed for the general proposition above stated, "that a corporation, independently of statute, may issue negotiable paper in the course of its proper business," are trading and business corporations; and the authorities above cited by counsel for plaintiff do not, for that reason, apply to the defendant, who is a public and municipal corporation, whose powers are confined strictly by its charter. But they are all unlike this case in the fact that in no one of them was the payment of the money restricted to a particular fund.

The demurrer in this case must, therefore, be sustained.