GEORGE STEWART *et al.*, Plaintiffs in Error, *v.* WILLIAM A. SMITH, Defendant in Error.

ERROR TO THE SUPERIOR COURT OF CHICAGO.

An instrument which recites, "Received from teams in our pork house, etc., two hundred and eighty hogs, weighing, etc., the product of which we promise to deliver to the order of A B, indorsed hereon," is negotiable under our statute, and the assignee can maintain a suit in his own name for the recovery of the product.

An acknowledgment of indebtedness in the simplest form, is all the statute requires, to give it the character of negotiability.

No consideration need be averred or proved, in an action on such a writing; unless the consideration is put in issue by plea. If no time of payment is specified, it becomes payable on demand; if made for the delivery of property, demand must be averred and proved.

The meaning of the word "product" in an investment like the above, may be proved orally, as having a local meaning.

All notes payable on demand, are not treated as over-due, until payment has been demanded and refused.

An indorsement without date, is presumed to have been made at the date of the instrument.

The presumption that a note past due is negotiated at the peril of the indorsee, does not attach to the indorsee of a note payable on demand in full force; whether the holder is to be subjected to this presumption, is a question of law, to be determined by the circumstances of each case.

The maker of such an instrument cannot show the state of accounts between himself and the payee, at a date subsequent to the real date of the indorsement, unless the indorsee had notice of the equities of the maker.

THE defendant in error brought his action against the plaintiffs in error in the Supreme Court of Chicago, and filed his declaration, containing three counts.

The first count states, that defendants (below) received, January 21, 1859, into their pork house, 280 hogs, weighing 45,545 pounds, from Stevens & Brother, the product of which they, the defendants, by their certain instrument in writing, then and there made and delivered to said Stevens & Brother, undertook and promised to deliver to the order of said Stevens & Brother, indorsed on said writing, and which instrument in writing is in the words and figures following:

" CHICAGO, 21st January, 1859.
" Received from teams in our pork house, No. 114 West Harrison street, 280 hogs, weighing 45,545 pounds, the product of which we promise to deliver to the order of Messrs. Stevens & Brother indorsed hereon.

G. & J. STEWART."

And avers that Stevens & Brother, afterwards, to wit, at Chicago aforesaid, for value received, indorsed and negotiated said instrument, and the same was afterwards, in due course of business, for value received, delivered to the plaintiff (below), by means whereof, said plaintiff became the legal holder and owner thereof; that by said indorsement Stevens & Brother ordered defendants to deliver, and the defendants by their said instrument in writing, undertook and promised to deliver, the product of said hogs to the plaintiff whenever they should be afterwards thereunto requested; by means whereof, and by force of the statute in such case made and provided, defendants became liable to deliver to plaintiff the product of said hogs on demand, at, etc. ; that the product of said hogs was large, to wit, 560 hams, 560 shoulders, 560 sides, 280 heads, and 10,000 pounds of lard, which product was of great value, to wit, of $2,500 ; that plaintiff afterwards, on or about June 12, 1859, produced said writing so indorsed by said Stevens & Brother, and so held by plaintiff, and presented to defendants, at, etc., and demanded the said product, to be then and there delivered to him, and that defendants then and there refused to deliver the same or any part thereof to him, to his damage $2,500.   Wherefore, etc.

The second count is like the first, except that it avers a demand for the product on May 23, 1861, instead of June 12, 1859.

The third count states, that on January 21, 1859, defendants (below) made their certain instrument in writing, of that date, and delivered the same to Stevens & Bro., in and by which said instrument in writing, defendants, in consideration of the receipt by them of two hundred and eighty hogs, weighing 45,545 pounds, from teams, in their pork house, promised to deliver the product of said hogs to the order of Messrs. Stevens & Bro., which said writing is in the words and figures following (setting out same instrument

as in the two previous counts,) and avers that Stevens & Bro., afterwards, on the day and year aforesaid, indorsed said instrument in writing, by which indorsement said Stevens & Bro. ordered said product of said hogs in said instrument in writing mentioned, to be delivered to the legal holder of said instrument; that afterwards, on the day and year aforesaid, at, etc., said Stevens & Bro. negotiated said instrument and passed the same out of their possession, and afterwards, on the —— day of ——, 1859, at, etc., said instrument was sold and delivered to plaintiff; by means whereof, and by force of the statute, etc., defendants became liable, and by said instrument they undertook and promised to deliver to plaintiff said product of said hogs, on demand of said plaintiff, according to the tenor and effect of said instrument and the indorsement aforesaid ; that there was a large product of said hogs, and of great value, to wit, of $2,500 ; that afterwards, on May 23, 1861, plaintiff being the legal holder of said instrument, produced the same indorsed as aforesaid, and with the following order written immediately above the signature of said Stevens & Bro., across the back of said instrument, to wit: " Deliver to the order of William A. Smith," and presented the same to defendants, at, etc., on the last aforesaid day, and demanded said product of said two hundred and eighty hogs to be then and there delivered by defendants to plaintiff, which was refused, etc., to the damage, etc., of $2,500.

To this declaration, the defendants pleaded :

1st. The general issue.

2nd. That the hogs in the narr. mentioned were none of them received from Stevens & Bro. as alleged, nor were any part of them ever owned by Stevens & Bro., but the same, at the time when, etc., were the exclusive property of defendants ; that said alleged promises, if made, were without consideration, and if said instruments of writing were indorsed and negotiated, and came into the possession of plaintiff, it was long after the same became due, to wit, on June 12, 1859, without the knowledge of defendants, and not in the ordinary and usual course of trade, etc. ; and concluding with a verification.

To the third plea a demurrer was sustained.

4th. That the hogs in said narr. mentioned, at the time when, etc., were the exclusive property of defendants, to which Stevens & Bro. had no title or claim whatever; that the promises and instruments in writing in the narr. mentioned, if made and delivered as alleged, were without consideration therefor, but were made and presented by defendants to said Stevens & Bro. gratuitously and in trust, to be held by them only as security for the payment by defendants to them of such balance as might, on settlement of account, be found and stated to be due from defendants to said Stevens & Bro., and upon condition that said instruments of writing should not be negotiated or assigned by Stevens & Bro., except on failure of defendants to pay such balance as might be found due as aforesaid, and that on such payment said instruments of writing, all and singular, be by said Stevens & Bro. re-delivered to defendants; that on May 28, 1859, defendants and said Stevens & Bro. had a full accounting and settlement, whereby a balance of $505.46 was then and there found and stated to be due from defendants to said Stevens & Bro., which said balance defendants then and there paid to said Stevens & Bro. in full satisfaction and discharge thereof; that defendants, since said settlement and payment, have been in nowise indebted to said Stevens & Bro.; that afterwards, on the day and year last aforesaid, defendants demanded of said Stevens & Bro. the re-delivery of said instruments of writing, all and singular; that at the time of said settlement and payment as aforesaid, defendants had no notice or knowledge that either of said instruments of writing had been indorsed, negotiated or passed out of the hands of said Stevens & Bro.; that if the same, or either of them, were indorsed, negotiated and passed, as in the said narr. alleged, it was without the authority, knowledge or assent of defendants thereto, and long after the same had become due and payable, to wit, on January 26, 1859, and not by absolute sale and delivery thereof in the ordinary course of trade, but as collateral, to wit, to D. Howard Smith & Co., as security for the payment of a certain promissory note made by said Stevens & Bro. to D. Howard

Smith & Co., for the payment to them of $2,000, in thirty days after the date thereof, with interest at the rate of ten per cent. per annum, and dated January 26, 1859, which said note was afterwards, to wit, on May 24, 1859, fully paid by said Stevens & Bro. to said D. Howard Smith & Co.; that if plaintiff came into possession of said instruments of writing, or either of them, it was not by absolute purchase and sale thereof in the usual and ordinary course of trade, but by delivery thereof to him by the said D. Howard Smith, for hazard and speculation, and without consideration, and long after the same had become due and payable, and after the payment by said Stevens & Bro., of said $2,000 note as aforesaid, to wit, on or about June 12, 1859; which they are ready to verify, etc. With which said pleas an affidavit of merits by said defendants below was duly made and filed.

To said second plea plaintiff filed his replication, that said instruments in writing were not made and delivered voluntarily and without consideration therefor; that they were not indorsed, negotiated and received by plaintiff after the same had respectively become due and payable according to the legal tenor and effect thereof respectively.

To the fourth plea plaintiff replied, that said instruments in writing were not made and delivered without consideration, and were not made and gratuitously presented by defendants to Stevens & Bro. in trust, to be held by them as security for such balance as might, on settlement of accounts, be found to be due to Stevens & Bro., and were not indorsed, negotiated and passed after the same respectively became due and payable according to their legal tenor and effect; that said Stevens & Bro. did not pay and discharge said $2,000 note before said promises and instruments in writing sued on were indorsed, negotiated and delivered to plaintiff; that plaintiff did not come into possession of said instruments in writing by delivery to him by said D. Howard Smith & Co., for hazard and speculation, without consideration, and after the same had become due and payable, and after the payment by Stevens & Bro. of said $2,000 note.

The plaintiffs below proved a demand of the product of the

instrument sued on, and defendants below replied that they had not got it.

Plaintiff then offered as evidence to the jury, the receipt referred to by the witness, of which the following is a copy:

"CHICAGO, January 21, 1859.

"Received, from teams in our pork house, No. 114 West Harrison street, 280 hogs, weighing 45,545 lbs., the product of which we promise to deliver to the order of Messrs. Stevens & Bro. indorsed hereon.

G. & J. STEWART."

Upon the back of which is an indorsement, as follows: "Deliver to the order of William A. Smith. STEVENS & BROTHER."

Whereupon defendants objected to the admission of said instrument of writing, indorsed as aforesaid, as evidence to the jury in said cause, because said writing is not assignable under the statute, so as to enable the assignee thereof to sue thereon in his own name; and because it is not a promissory note, and does not of itself import a good and sufficient consideration for the promise therein expressed, and that the plaintiff hath not alleged in his narr. nor proved a sufficient consideration for said promise.

But the court overruled the objection, and allowed the writing to be read in evidence to the jury. Plaintiff then called witnesses, (pork packers and produce dealers,) and offered to prove to the jury, by them, the "mercantile meaning" of the word "product," as used in said instrument of writing, and also to prove by them the value (on or about June 12, 1859, and on or about May 23, 1861,) of such product, as they (said witnesses) understood the meaning of said word "product," in said instrument, to import.

Whereupon defendants objected to the introduction of such proof,

1st. Because there are no allegations in plaintiff's narr. that said word "product" had, or was used in said instrument as having any unusual or local sense or meaning thereof.

2nd. Because it was not competent for plaintiff to prove the value of any alleged or supposed product to which said

Stewart *et al. v.* Smith.

instrument might refer, at the several different times alleged in said narr.

3rd. Because plaintiff hath not made, by his allegations and proofs, such a case as entitled him to prove to the jury the value of any product whatever.

But the court overruled the objections, and decided that such evidence might be given to the jury, and the plaintiff below proved the amount and value of the product of the hogs, stated in the obligation sued on.

Defendants then called a witness and asked him to state when, according to the custom of merchants in the city of Chicago, said instrument of writing would be deemed and considered as demandable. To which he answered: "On the next day, or as soon as the hogs could be cut." Said witness also stated, in answer to a question of plaintiff, that when hogs are delivered to be cut, a reasonable time would be allowed before the product would be demanded. It would not be expected that it would be called for the next day, although he supposed it might be.

There was a verdict in said cause in favor of the plaintiff below and against the defendants, for the sum of $2,402.75 damages therein, whereupon the defendants moved to set aside said verdict, and to grant them a new trial, which motion was overruled.

The assignment of errors is as follows :

Court below erred in allowing said receipt, or instrument in writing, to be given in evidence to the jury in said cause.

In permitting evidence to the jury of the "mercantile meaning" of said instrument in writing, and of the word "product," as used therein.

In permitting evidence to the jury of the nature and value of "hog product" in general, without limiting such testimony to the specific product alleged in the narr., and proved to have been duly demanded.

In rejecting the evidence offered by defendants below, tending to establish the facts, or either of them, set forth in their second and fourth pleas, or either of them.

In overruling their motion for a new trial in said cause.

A. E. WOLCOTT, for Plaintiffs in Error.

The "instrument" declared on and given in evidence at the trial below, is not assignable so as to authorize the holder to bring suit in his own name. Purple's Statutes, chap. 73, sec. 3.

Said "instrument," if assignable under the statute, is not a "promissory note," and does not import and dispense with the necessity of alleging and proving a consideration for the alleged promise. 24 Ill. 170.

Said instrument was, on the 26th of January, 1859, "over-due," so far, at least, as to put an ordinary prudent man upon inquiries concerning all equities which the makers might have against it in the hands of the promisees.

The third amended plea to the narr. of plaintiff below avers, (and the demurrer thereto admits), that plaintiff below obtained said instrument of writing after May 28, 1859, which fact (if said instrument, at that date, is to be considered "over-due," so far, at least, as to put an ordinary prudent man upon inquiry concerning any equities which the "makers or other persons apparently liable" thereon might have against it), constitutes, in connection with the other averments of said plea, a complete defense to the suit. 20 Ill. 573.

If said demurrer to said plea was sustainable at all, it should have been carried back and sustained against the plaintiffs' narr., which is fatally defective, and is not cured by verdict. 1 Ch. Pl. 330, 331; N. 615; 10 Wend. 487; *Price* v. *Easton,* 1 Nev. and Man. 303.

WALLER & CAULFIELD, for Defendant in Error.

The only material question involved in the pleadings and evidence is, whether the instrument sued on is assignable under the statute.

The third section of the 73rd chapter of the Revised Statutes, Purple's Digest, page 772, gives validity to "all promissory notes, bonds, due-bills, and other instruments in writing," for the payment of "any sum of money or articles of personal property;" and section four makes them assignable "by indorsement thereon," "in the same manner as bills of ex-

change are, so as absolutely to transfer and vest the property thereof in each and every assignee or assignees successively."

It cannot be disputed. that the paper sued on is an "instrument in writing" for the payment of "articles of personal property." A hog is an article of personal property, and the product, or the hog cut up, retains the same character. The different pieces into which the 280 hogs were cut up, are "articles of personal property," just as were the hogs.

When no time is fixed in a contract for the delivery of specific articles, they are deliverable on demand. 5 Cowen, 517.

Although the "product" of the hogs named in this instrument was demandable after a reasonable time for the cutting and curing had elapsed, yet a demand and refusal was necessary before the instrument could be regarded as over-due. 1 Parsons on Contracts, p. 217. See note *k.*

The question as to what is reasonable time within which a note due on demand must be indorsed after it is made, in order to shut out any equities between the maker and indorser, is purely a question of law. 3 Kent's Com. 91, 3rd ed. ; *Sylvester* v. *Crape*, 15 Pick. 93 ; *Camp* v. *Scott*, 14 Verm. 387.

This instrument was made on the 21st of January, 1859, and indorsed on the 26th of January—a period of only five days intervening.

The court will not presume this instrument dishonored prior to the 12th of June, 1859. If it were simply a promissory note on demand, such a presumption would not necessarily be indulged. 7 Foster (N. H.), 235 ; 5 N. Hamp. 163, 164.

The plaintiff below had a right to introduce evidence of the mercantile meaning of the term "product," as used in the instrument. *Myers* v. *Walker*, 24 Ill. 133.

BREESE, J. The only question of real importance presented by this record, and seriously discussed, is, whether the instrument declared on is assignable under the statute.

Chapter 73, title "Negotiable Instruments," provides, by section 3, that, "All promissory notes, bonds, due-bills, and other instruments in writing, made or to be made, by any per-

son or persons, body politic or corporate, whereby such person or persons promise or agree to pay any sum of money, or articles of personal property, or any sum of money in personal property, or acknowledge any sum of money or article of personal property to be due to any person or persons, shall be taken to be due and payable ; and the sum of money or article of personal property therein mentioned, shall, by virtue thereof, be due and payable to the person or persons to whom the said· note, bond, bill, or any other instrument in writing is made. Section 4 provides, that such notes, etc., and instruments in writing, shall be assignable by indorsement under the hand or hands of such person or persons, and of his, her or their assignee or assignees, in the same manner as bills of exchange, so as absolutely to transfer and vest the property thereof in each and every assignee or assignees successively ; and section 5 authorizes the assignee to institute and maintain a suit in his own name for the recovery thereof, etc. (Scates' Comp. 291.)

The instrument sued on, is as follows :

"CHICAGO, 21st January, 1859.

"Received from teams in our pork house, No. 114 West Harrison street, 280 hogs, weighing 45,545 pounds, the product of which we promise to deliver to the order of Messrs. Stevens & Brother indorsed hereon.

G. & J. STEWART."

By section 12, the word *pay* is treated as synonymous with *deliver*, where bulky articles are to be paid.

Testing the writing by this statute, there cannot be a doubt upon its assignability. It is an instrument in writing—it purports to be made by persons—by it, those persons promise and agree to deliver a certain article of personal property, to the order of certain other persons. By force of the statute, this article of personal property mentioned in the instrument of writing so made, by virtue of its being so mentioned, and in such form of words, must be taken to be due and payable to the persons to whom the instrument in writing is made.

The statute does not require that the note or instrument in writing shall be payable at any particular time or place, or be expressed for value received, or that any consideration whatever should appear in the writings—an acknowledgment of

indebtedness, in the simplest form, would seem to be all the statute requires to give it the character of negotiability. A writing in this form, probably the simplest, would be a perfect negotiable note under this statute: Due John Brown, ten thousand dollars, July 4, 1862, and signed by the maker. Such an instrument is clothed with all the attributes of negotiability, and imports a consideration, and no averments or proofs are necessary on those points.

The instrument before us is for the delivery or payment of an article of personal property, to wit, the product of 280 hogs, weighing 45,545 pounds, and by the express language of the statute is assignable. Though not a bill or note for the direct payment of money, yet, being made assignable by the statute, it becomes invested with all the qualities of mercantile paper, so far as the rules of pleading are concerned. No consideration need be averred or proved in an action on such a writing, unless it is questioned or attacked by a plea to the consideration. And such an instrument is payable on demand, if no time of payment is specified therein. But when the instrument is for the delivery of property, a demand before suit must be alleged and proved. This is a familiar principle. There was no plea to the consideration in this case, and proof of a demand was made before the suit was instituted. The plaintiffs in error contend that the term " product " is indefinite and unmeaning. To render it plain and intelligible, testimony was introduced to show what the term meant among dealers in Chicago, and for this, the case of *Myers* v. *Walker*, 24 Ill. 133, was authority. In that case, we held that evidence to prove the word " season," used in the contract, had a a local meaning, was properly admitted. When local terms or phrases are employed, the presumption is, the parties understood their meaning, and employed them according to their local signification. Id.

The word " product," as employed in this agreement applied to hogs, had a meaning well known and understood by dealers in the article at the place of the contract, and the proof as to that, relieved the writing of the charge that it was indefinite and unmeaning.

The other point made by plaintiffs, that the instrument was over-due on the 26th of January, 1859, when it was indorsed, to such an extent as to put a prudent man upon inquiry in respect to all equities which the makers might have against it in the hands of the promisee, we do not consider a strong one.

All notes payable on demand, are, in one sense, always " over-due," but are not so treated until payment has been demanded and refused ; they then become like bills on time, which have been dishonored. To bring them within this rule, there must be evidence of such demand and refusal.

The first count of this declaration, after averring the indorsement to the plaintiff, avers, that on or about the 12th of June, 1859, he produced the writing so indorsed, and presented it to the defendants, and demanded the product to be delivered to him. The second count avers the demand for the product was made May 23, 1859, and so does the third count, which also sets out the indorsement.

The indorsement is without date, and the presumption is, it was made at the date of the instrument. A witness, however, states it was indorsed on the 26th of January, 1859. It was then, in a strict sense, " over-due " five days only, and it seems to have been negotiated *bona fide* in the regular course of business.

The presumption, if a note is taken after it is due and payable, undoubtedly is against the validity of the demand,—the purchaser takes it as a dishonored bill at his peril, and subject to every defense existing against it, and arising out of it, before it was negotiable. When a note, payable on demand, is to be deemed out of time, so as to subject the holder to the operation of this rule, is a question of law, to be determined by the circumstances of each case. There is no certain rule on the subject, nor is there any certain rule prescribing the precise time in which it must be presented for payment. Circumstances must control this also. 3 Kent's Com. 91. When it is considered, before the number of hogs specified in the instrument, could be converted into " product," some days must necessarily elapse, we should not deem

a delay of five days in negotiating it, as unreasonable, nor five months unreasonable in demanding payment. The indorsement being in season cut off all equities, if there were any, in defendant's favor, and the only hazard incurred in holding it back for payment, was that the release of the indorsers might have been caused by it, but not the release of the maker. It was competent to the holder to extend reasonable delay to him.

The indorsement having been made on the 26th of January, 1859, the defendants could not be permitted to show the state of their demands against the payees and indorsers at a date subsequent to that, unless they could be shown the indorsement was in fact made subsequent to the time it bears date, and that plaintiff took the paper, with notice of the maker's equities against it. Nothing of this is pretended.

We cannot, from the proof, deem this instrument dishonored prior to June 12, 1859. Was the indorser the defendant, the case would be different. Under many circumstances, a delay of five months in making a demand of payment, would discharge an indorser, but we know of no law by which such delay could discharge the maker. Credit may be given to him at the risk of the indorser.

As the maker's equities were shut out by this indorsement being made in reasonable time, we do not well see how he can complain if time has been given to him.

The judgment is affirmed.

*Judgment affirmed.*

WALKER, J. I can only regard this as a receipt for pork. It wants almost every quality of a promissory note. It has neither time nor place of payment, nor is any amount of money, or specific articles of property, agreed to be paid. It contains an agreement to deliver the proceeds of the pork to the order of the Stevens, but it does not state in what the proceeds shall consist, whether of money or meat, and other product of the hogs. To ascertain that fact, extrinsic evidence had to be heard, as well as to ascertain its value. This is not for the payment of any article of personal property, but is for the

27

product of an article of property, and is therefore not within the statute, and is not a promissory note, or a negotiable instrument.