TRAVELERS' INS. CO. V. CITY OF DENVER.

1. Under the General Statutes, chapter 9, sections 3-5, providing that instruments of writing whereby one person acknowledges any sum to be due to any other shall be taken to be due and payable to whom such writing is made, making it assignable by indorsement as bills of exchange are, and authorizing the assignee to sue in his own name, a city warrant directing the city treasurer to pay to the order of the payee a certain sum, reciting that it is issued by order of the city council, and signed by the mayor and city clerk, is a negotiable instrument, and an allegation of consideration in an action thereon is not necessary.

2. The charter of the city of Denver divides the city sewers into three classes,— public, district and private,— and makes provision that the cost of public sewers shall be met by an appropriation out of the public revenue; but the only provision made for payment of the cost of district sewers is by an assessment upon the lots of the district, to be collected like other taxes. It also requires warrants drawn by the city government to specify out of what funds they are payable. *Held*, that the presumption being that officers do their duty, a warrant, not expressed as payable out of the public sewer fund, but " out of the 20th St. sewer fund, on account of the 20th St. sewer cont.," is drawn on a particular district fund, and that an action cannot be sustained thereon against the city without an allegation that there is money in that fund to pay the warrant.

3. The holder of city warrants is not bound to proceed by *mandamus* against the city treasurer, but may sue the city directly on the warrants.

## Error to Superior Court of Denver.

THIS action was brought by the plaintiff, the Travelers' Insurance Company, against the defendant, the city of Denver, to recover the sum of $25,497.80, and interest, alleged to be due it upon certain city warrants, which warrants were set out in the complaint, and constituted ten separate causes of action, the averments in each cause of action being the same, except as to the date and amount of the warrant therein set out, and the date of the presentment thereof indorsed thereon.    The first cause of action is set out as follows:

" That the plaintiff is a corporation duly organized and incorporated under the laws of the state of Connecticut. That the defendant is a municipal corporation created, organized, and chartered and incorporated under and by virtue of the laws of the said state of Colorado, and more particularly under a public act of the general assembly of the said state, approved April 6, A. D. 1877.    That heretofore, and on the 3d day of July, 1882, at Denver, in the county of Arapahoe and state of Colorado, aforesaid, the said defendant made, executed and delivered unto one Joseph Williams, then and now being of the said city of Denver, its certain instrument of writing obligatory, com-

monly known as and called a ' City Warrant,' in manner and form, words and figures, as. follows, to wit:

" ' $1,308.21.    CITY CLERK'S OFFICE,    No. 102.

" ' DENVER, COLO., 7–3, 1882.

" ' *Treasurer of the City of Denver:* Pay to the order of Joseph Williams the sum of thirteen hundred eight and 21–100 dollars out of the 20th St. sewer fund, on account of the 20th St. sewer cont.

" ' By order of the city council made 7–1, 1882.

" ' Attest:   JAS. T. SMITH, City Clerk.

" ' ROBERT MORRIS, Mayor.'

" The words: ' Presented for payment July 3, 1882. No funds. This warrant bears interest from this date at ten per cent. per annum. WM. M. BLISS, City Treasurer,'— were written across the face of said warrants, and said warrants were indorsed on the back as follows: ' JOSEPH WILLIAMS.' That on the 3d day of July, 1882, the said warrant was duly presented to said defendant for payment, and payment thereof demanded, and defendant then and there refused to pay the same, and caused the indorsement written on said warrant to be made. That thereupon and thereby the said defendant promised to pay to the said Joseph Williams' order, for value received, the sum of thirteen hundred and eight and 21–100 dollars ($1,308.21), with interest thereon at the rate of ten per cent. per annum from the said 3d day of July, 1882. That thereafter, and prior to the commencement of this action, the said Joseph Williams, for value received, sold, released, transferred and assigned the said city warrant unto the said plaintiff. That no part of the same has been paid, and that the said defendant has failed, neglected and refused, and still does fail, neglect and refuse, to pay the said sum of thirteen hundred and eight and 21–100 dollars, or any part thereof; and there is now due and owing to said plaintiff from said defendant, on said warrant, the said sum of thirteen hundred and eight and 21–100 dollars, together with in-

terest thereon from and since the said 3d day of July, 1882, at the rate of ten per cent. per annum." The defendant demurred to each and every count of the complaint on the ground that the complaint did not state facts sufficient to constitute a cause of action against the defendant. The demurrer was sustained, and, the plaintiff failing to amend its complaint, judgment was entered in favor of defendant for its costs.

Messrs. J. P. BROCKWAY and JOHN H. CROXTON, for plaintiff in error.

Mr. JAMES H. BROWN, City Attorney, for defendant in error.

RISING, C. Counsel for defendant in error, in their argument, urge three grounds in support of the ruling of the court below: (1) That the complaint contains no allegations showing any consideration for the warrants sued on; (2) that there is no allegation in the complaint showing that there ever was or is any money in the treasury of defendant to the credit of the fund on which the warrants are drawn, sufficient to pay the same, or either of them; (3) that an action against defendant, on such city warrants, cannot be maintained; that plaintiff's remedy is by *mandamus* against the city treasurer.

The contention of defendant in error is that the warrants sued on are not negotiable instruments. We think these warrants are made negotiable by the provisions of sections 3–5, chapter 9, General Statutes. It is provided by section 3 that instruments of writing whereby one person acknowledges any sum to be due to any other person shall be taken to be due and payable to whom the said instrument in writing is made; by section 4 such instrument in writing is made assignable by indorsement of the payee thereon, in the same manner as bills of exchange; and by section 5 the assignee of such instrument in writing may maintain an action thereon in his own

name, which he could also do under the provisions of the code. These provisions of our statute were adopted in this state from the statutes of Illinois, in which state they have been construed to make a county order a negotiable instrument, in *Garvin v. Wiswell*, 83 Ill. 215; and county warrants have been held to be negotiable, in this state, in *People v. Hall*, 8 Colo. 485, 496. For instances in which instruments in writing have, under these provisions, been held to be negotiable instruments, see *Lee v. Balcom*, 9 Colo. 216; *Stewart v. Smith*, 28 Ill. 397; *Archer v. Claflin*, 31 Ill. 306–315; *Petillon v. Lorden*, 86 Ill. 361.

The second ground urged by defendant in error in support of the ruling of the court in sustaining the demurrer to the complaint goes to the main question in the case. Counsel for defendant in error contend that the warrants set out in the complaint are, by the express terms thereof, drawn on a special fund, and that, being so drawn, the complaint does not state a cause of action, in that it is not alleged therein that there is money in said special fund with which to pay the warrants sued on; while counsel for plaintiff in error contend that the warrants are drawn on the general revenue of the city, and are payable out of the same, and that, being so drawn, it was not necessary for the plaintiff to allege, in its complaint, that there was money in the general fund of the city with which to pay the warrants. It seems to be well settled that, in an action upon warrants drawn on a special fund, it is necessary for the plaintiff to allege that there is money in that fund to pay the same. *Reeve v. City of Oshkosh*, 33 Wis. 477; *Campbell v. Polk Co.* 49 Mo. 214; *Board v. Mason*, 9 Ind. 97; 1 Dill. Mun. Corp. § 505; 1 Daniel, Neg. Inst. § 433. The warrants contain a direction to the treasurer of the city to pay "out of the 20th St. sewer fund," to the order of Joseph Williams, the sums in said warrants named. It is claimed by plaintiff in error that this direction to pay "out of

the 20th St. sewer fund" must be considered as descriptive of the purpose for which the warrants were drawn. We do not think the claim well founded. The purpose for which the warrants were drawn is stated therein to be "on account of the 20th St. sewer cont.," and this statement is so clearly expressed that no doubt can arise in relation to the purpose for which the warrants were drawn. It is also clear that, upon the face of the warrants, the direction is to make payment out of a particular fund. To overcome this apparent special-fund feature of the warrants, counsel for plaintiff in error contend that the city is primarily liable for the indebtedness evidenced by such warrants, and that, the city being liable; for the payment of such indebtedness, whether there is or is not such special fund, the warrants must be held to be drawn on the general revenue, notwithstanding the direction made. To properly understand the force and effect of the clause in the warrants relating to the fund out of which payment is to be made, we must look to the provisions of the charter authorizing the city to draw. warrants. It is provided, in section 62 of the charter, that "all warrants drawn upon the treasurer shall be signed by the mayor, and countersigned by the city clerk, and shall state to whom payable, and from what fund payable, and for what purpose." These requirements as to what the warrants shall state are mandatory, and a warrant which does not comply with these requirements in its statements does not create any liability against the city, and is not evidence of a debt against it. *Reeve v. City of Oshkosh*, 33 Wis. 477, 480; *Bayerque v. San Francisco*, 1 McAll. 175, 176; *Argenti v. San Francisco*, 16 Cal. 256–276. From these provisions of the charter it will be seen that the form of the warrants is in compliance with the requirements of the charter. It being the duty of the officer who drew the warrants to direct therein from what fund the same shall be paid, the presumption arises that the officer did his duty in that re-:

gard, and made them payable out of the proper fund.
The presumption is that public officers do as the law and
their duty requires them.    Lawson, Pres. Ev. 53.    But
it is contended by counsel for plaintiff in error that there
is no provision of the charter which creates a special
fund of any kind, and no provision which authorizes the
city council to create a special fund, and that, therefore,
the presumption that the officer properly performed his
duty is overcome.    We do not think that the position of
counsel that the charter does not authorize the creation
of a special fund is well taken.    A special fund is noth-
ing more nor less than a particular fund; a fund that is
specially provided for a particular purpose.    Section 60
of the charter expressly provides that the city council
shall pass an annual appropriation ordinance, appropriat-
ing certain definite sums of money to defray the ex-
penses incident to each department of the city govern-
ment.    By this provision of the charter the city council
is required to create a special fund for each department
of the city government.    It may be urged that this pro-
vision of the charter did not authorize the council to
create the particular fund named in the warrants, but
we think that the power is inherent in the city authori-
ties to create a special fund for the payment of any in-
debtedness which they are authorized to contract, when
the creation of such fund does not interfere with any
other fund created under the provisions of the charter,
and that they may, by contract with the creditor, pro-
vide that the payment of such indebtedness shall be out
of a special fund to be created for that purpose.    As-
suming that the city authorities had the power to con-
tract the indebtedness evidenced by the warrants, it
follows that they had power to contract for the manner of
its payment, and the presumption arises that the officer
drawing the warrants did his duty in that regard, and drew
them in accordance with the law and his duty, and in ac-
cordance with the terms of the contract under which such

indebtedness was incurred. The wording of the statement in the warrants, as to the purpose for which they were drawn, shows that the indebtedness was incurred on account of the construction of the Twentieth-street sewer; and, as it clearly appears from the provisions of section 60 of the charter that all the money received by the city from taxation, or from other sources of general revenue, must be appropriated, in definite sums, to defray the expenses incident to each department of the city government, it follows that the warrants for such indebtedness must necessarily be drawn on some particular fund appropriated to defray the expenses of some particular department of the city government, and under which department the construction of sewers would come, or on some particular fund created, or to be created, for the special purpose of paying such indebtedness. The main contention of plaintiff in error is not in relation to the form of the warrants, but that the city is primarily liable for the indebtedness incurred under the Twentieth-street sewer contract, and that, being so liable, an action will lie on the warrants given therefor, whether there is or is not money in the fund drawn on to pay them. The liability of the city is created by the terms of the warrants and the provisions of the city charter. It is therefore necessary to examine the provisions of the charter in order to ascertain the character of the city's liability in this action. The charter provides for the establishment, by the city council, of a sewer system, to be divided into three classes, to be called "public," "district" and "private" sewers. Public sewers cannot be constructed until the question of constructing the same shall first have been submitted to a vote of such of the tax payers of the city as are legal voters, and approved by a majority thereof; district sewers are to be constructed whenever a majority of the property holders resident in the district shall petition therefor, or whenever the board of health recommend the same as necessary for sanitary

reasons, and said recommendation is approved by the city council; and private sewers may be constructed under such restrictions and regulations as the council may prescribe by general or special ordinance. It is expressly provided that, to meet the cost of each public sewer, an appropriation shall be made from the public revenue, and that the city shall be at no expense in the construction, repairing or cleaning of private sewers. It is apparent from the provisions of the charter, and from the statements in the warrants, that they were drawn on account of the construction of a district sewer; for, had they been drawn on account of the construction of a public sewer, they would properly have been made payable out of the public sewer fund, expressly authorized to be created by the charter, and the purpose for which they were drawn would have been designated as on account of the public sewer construction. The charter further provides, in relation to public and district sewers, that " the city engineer shall, in all cases except in case of necessary repairs requiring prompt attention, prepare and submit to the council estimates of costs of any proposed work, and, under the direction of the council, he shall advertise for bids and let out said work by contract to the lowest responsible bidder. * * * Every ordinance requiring such work to be done shall contain a specific appropriation from the proper revenue and fund, based upon an estimate of cost for the whole of the cost of each street, part of street, or other object, respectively, and every contract shall contain a clause to the effect that it is subject to the provisions of the charter that the aggregate payments thereon shall be limited by the amount of such specified appropriation." It is further provided by the charter that " as soon as a district sewer, with its inlets, man-holes and appurtenances, is fully completed, the city council shall cause the city engineer to compute the whole cost thereof, and the city assessor shall assess the amount as a special tax against all the lots of ground

in this district, respectively, without regard to improvements, and in proportion as their respective areas bear to the area of the whole district, exclusive of the public highway; and the council shall cause to be made a certified bill of such assessments against each lot in the district, in the name of the owner if known, which shall be collected and paid in the same manner as all other city taxes." This examination of the provisions of the charter discloses the fact that it is expressly provided that the cost of public sewers must be met by an appropriation out of the public revenue, and that no provision is made for meeting the cost of district sewers in any manner except by an assessment upon the lots of ground in the district. The fact that an appropriation to meet the cost of public sewers from the public revenue is authorized, and that no like provision is made for meeting the cost of district sewers, clearly shows that the fund to be created by an assessment on the lots was intended as the primary source from which payment of the cost of constructing such sewers was to be made. The provision that ordinances requiring work to be done upon public or district sewers shall contain a specific appropriation from the proper revenue and fund tends strongly to support this construction. If the cost of district sewers was to be met in the same manner as the cost of public sewers, a provision requiring an appropriation from the public revenue would have clearly expressed the intention of the law-makers; but, if it was intended that the funds from which the cost of the different classes of sewers was to be met were to be different for the different classes, then the language used is appropriate and apt to express such intention. The proper revenue to be appropriated for the payment of the cost of public sewers would be the public revenue, and the proper fund to be appropriated for the payment of the cost of district sewers would be the fund created by an appropriation, based upon an estimate of the whole cost of the sewer, and to be raised

by an assessment on the lots of ground in the district. Parties contracting with municipal corporations do so with reference to the charter provisions of such corporations; and, as the provisions of the charter of the city of Denver provide for the creation of a special fund for the payment of the cost of constructing district sewers, a party who contracts with the city for the construction of such sewers must be held to have contracted to receive his pay therefor out of the fund provided for by the charter, unless he shows by an express contract, which the city was authorized to make, that he was to receive payment in some other way. The city having contracted to take certain steps to create a proper fund for the payment of the cost of constructing the sewer, and a party contracting to do the work having contracted that payment therefor should be made out of the fund so to be created, it is evident that the city is not liable, in an action on warrants drawn on that fund, without a showing that there is money in the fund to pay the same. The primary liability of the city is upon its contract to create a fund. *Bill v. City of Denver*, 29 Fed. Rep. 344.

We do not think the third ground urged by defendant in error in support of the ruling of the court below is well taken. The judgment should be affirmed.

DE FRANCE, C., concurs. STALLCUP, C., dissents.

PER CURIAM. For the reasons assigned in the foregoing opinion the judgment is affirmed.

*Affirmed.*