RICHARD W. HOCKADAY, PLAINTIFF IN ERROR, v. THE
BOARD OF COUNTY COMMISSIONERS, AND JOHN G. HOL-
LENBECK, TREASURER, DEFENDANTS IN ERROR.

1. VALIDITY OF COUNTY WARRANTS—CONSTITUTIONAL LIMITATION.—
Where warrants are drawn upon and payable out of a specific county
fund, to the credit of which there is, or ought to be, money appli-
cable to their payment, a defense that the county was indebted in
excess of the constitutional limitation when the indebtedness was
contracted and the warrants issued, is not available in behalf of the
county.

2. ROAD FUND NOT DIVERTIBLE TO OTHER PURPOSES.—The legislature
having lawfully and wisely provided that a specific fund be as-
sessed, levied, collected and applied to road purposes only, in each
county, such fund is as specific for that purpose, and as unavailable
for other purposes, as the school fund is made unavailable for other
purposes by the constitution.

3. WARRANTS DRAWN ON SPECIAL FUND NOT THE CREATION OF A
DEBT.—The drawing of warrants against a special fund already
provided and certain to be in the hands of the treasurer for their
payment within the fiscal year is not the creation of a debt within
the constitutional prohibition. It is only the valid appropriation
of moneys belonging to the fund in anticipation of their collection.

4. WARRANTS ON SPECIAL FUND NOT INVALIDATED BY GENERAL
COUNTY INDEBTEDNESS.—Where it is made to appear that all the
warrants drawn on a particular county fund during a series of years
extending from 1883 to 1886, both inclusive, did not exceed but
were clearly within the fund annually provided for their payment,
none of such warrants could become invalid by reason of the gen-
eral indebtedness of the county exceeding the constitutional limit.

5. OBJECTIONS WAIVED TO FORM OF ACTION.—Where no objection is
raised to the form of action in the trial court, but an answer on the
merits is filed, issues made up, and the case tried and adjudicated
without question as to the form of action selected, its propriety is
conceded and objections thereto are waived.

6. WHEN REMEDY BY MANDAMUS NOT AVAILABLE.—*Mandamus* is the
proper proceeding to compel an officer to pay warrants drawn on a
special fund who refuses to pay; but to make the remedy available,
proof must be made that the officer has funds in his hands available
for the purpose. Where the refusal to pay was based on the lack
of funds, as appears by stipulation of defendants, and which further
shows, by figures and abstracts from the county records, that there
should have been a large balance in the officer's hands to the credit

of this special fund, these facts make a *prima facie* case for the plaintiff under his complaint for discovery, accounting and general relief. The absence or misappropriation of the special fund appearing by the stipulation, and known to the plaintiff in advance, renders the proceeding by *mandamus* unavailing.

7. COMMON LAW REMEDIES WHEN AVAILABLE.—Where a cause of action exists concerning which no specific remedy has been prescribed by the legislature, the remedy may be as at common law, except in so far as the common law procedure is modified by the civil code.

8. REMEDY IN NATURE OF INDEBITATUS ASSUMPSIT WHEN PROPER.— The code remedy of a general action, being the equivalent, in an enlarged degree, of *indebitatus assumpsit* at common law, and which covered all cases of damages by intentional wrongful acts, misappropriation of moneys, gross carelessness or culpable negligence, is an appropriate and maintainable remedy for the holder of county warrants drawn upon a special fund, where the fund has been illegally withdrawn and wrongfully appropriated to other purposes by the agents of the county entrusted with the management of its finances. The law does not require a creditor to proceed by an extraordinary remedy to secure money that has no existence in a special fund.

9. WHEN EQUITABLE RELIEF GRANTABLE IN LEGAL ACTION.—Under the code system of practice which permits both legal and equitable relief to be granted in proper cases, where the records of the county show money in the special fund on which the plaintiff's warrants were drawn, but payment thereof has been refused for the alleged want of money, the plaintiff is entitled to equitable relief to the extent of a discovery and accounting, since he has a right to know why his claims were not paid from the money admitted to have been in the treasury to the credit of that fund, and to such information as may possibly enable him to enforce his claims.

*Error to District Court of Chaffee County.*

THE plaintiff Hockaday brought suit against the defendants to collect from the county the amounts due on several county warrants or orders, aggregating $1,318.29, and the interest on the same. Such warrants were issued in the years 1884, 1885 and 1886, and were drawn payable out of any moneys in the treasury belonging to the "*Road Fund.*" The warrants were presented to the treasurer of the county for payment at various dates from April 28, 1884, to March 31, 1886; were not paid, but were indorsed by the

treasurer, "not paid for want of funds," and registered as required by law.

The complaint is drawn with great care and great particularity of detail. It is alleged that on the 2d day of October, 1883, the board of county commissioners set aside and designated of the taxes of that year, ten thousand nine hundred and fifty-three dollars and sixty-nine cents, ($10,953.69,) as a road fund; on the 6th day of October, 1884, the sum of $15,396.18; on the 6th day of October, 1885, the sum of $12,052.52, the aggregate for the three years being $38,402.39, to which was to be added the further sum of $4,825.18, due the county of Chaffee from the county of Lake, which was by the board of county commissioners of the former county set aside and designated as a part of the road fund, making the supposed available fund amount to the sum of $43,227.57. That there was drawn against said fund for the year ending December 1, 1884, $15,334.75; for the year ending December 1, 1885, $6,384.81, and between the 1st day of December, 1885, and the 8th day of March, 1888, $1,515.08, aggregating $23,234.67, leaving a large balance, and alleging a refusal of the defendants to pay the warrants in controversy according to the date of presentation, or at all, and that they and all of them remain wholly unpaid and over-due.

It is further alleged that "the board of commissioners and the said treasurer have diverted and are still diverting said taxes apportioned for the payment of said warrants to the payment of certain other road warrants not held by plaintiff, and which were not presented to the said treasurer for payment until long after the presentation of plaintiff's said warrants, and to the payment of other road and other general fund warrants not issued until long after the presentation of the plaintiff's said warrants for payment as aforesaid; that the said board of commissioners and the said treasurer of the said Chaffee county pretend that said warrants held and owned by plaintiff were issued in excess of the limitation fixed in the constitution of the state of Colorado concerning the creation of the county debts; whereas plaintiff charges the contrary

thereof to be true, and doth say that the said warrants held and owned by plaintiff, together with all other warrants drawn during the period aforesaid upon the said road fund, were within the apportionment of said taxes made for said road fund, and that said apportionment of said taxes was by said board of commissioners duly and lawfully made, whereby so much of the said annual taxes of the said Chaffee county as was set aside and for a road fund, for and against which to the full amount of said apportionment said road warrants might well and lawfully be drawn, and when so drawn said county became liable to pay the same, and the plaintiff, by the law of the land, is entitled to recover against the county, by its said corporate name of the board of commissioners of Chaffee county, to the extent of the sums of money in the said warrants specified, with interest thereon as aforesaid."

The prayer of the complaint is as follows: "Wherefore plaintiff prays judgment against the said defendant board of commissioners of said Chaffee county for the aggregate sum of money in plaintiff's said warrants specified, with interest upon each of said sums from the date of the presentation of said respective warrants to the treasurer of said Chaffee county for payment as aforesaid; but if the court shall be of the opinion that for any cause plaintiff is not entitled to recover judgment as aforesaid against the said commissioners, then, and in that case, plaintiff prays that an account may be taken of all said warrants drawn upon the said road fund during the period aforesaid, and of all apportionments of the taxes of said Chaffee county for road purposes during the period aforesaid; and of all said taxes so apportioned for that purpose which have been collected and remain uncollected, as well as for the sum due from the said Lake county to the said Chaffee county, on account of said road fund; and that the said warrants so drawn against the said fund be adjudged to be an assignment of said road fund to the holder of said warrants, and that the said board of commissioners and the said treasurer be adjudged and decreed to

hold said funds to and for the use of the said holders of the said warrants as their rights may be ascertained, and to pay the same to the holders of said warrants according to their right and powers to receive the same; and that an account be taken of the warrants held and owned by the plaintiff as aforesaid, with the interest thereon, and that the same be paid out of said funds according to the date of their presentation to the treasurer of said Chaffee county for payment. And if it shall appear to the court that the board of commissioners and the said treasurer, or either of them, have diverted said fund or any part thereof to other or different purposes than that for which said taxes were apportioned, levied and collected, that judgment be rendered in favor of plaintiff against the said board of commissioners and against the said treasurer of said county, for such sum or sums as may have been diverted by said board of commissioners or said treasurer to such other and different purposes;" closing with a prayer for an injunction, " That the defendants be restrained from paying out or applying said fund so apportioned and set aside as aforesaid to any purpose other than the payment of said warrants, and then only to the payment of the same according to their priority of presentation and demand of payment."

The defendants answered, first, denying specifically each allegation of the complaint. " That the said warrants, and each of them specified and set forth in plaintiff's complaint, were issued or attempted to be issued and the debt thereof assumed to be contracted, or attempted to be contracted, by the said board of county commissioners of Chaffee county, in direct violation of, and contrary to, the provisions of section six (6), of article eleven (11), of the constitution of the state of Colorado.

" That at several dates and times at which said warrants were issued, or attempted to be issued, the limitation of the aggregate amount of debt which could lawfully be contracted or incurred bv said county of Chaffee for all purposes,

as prescribed by the aforesaid constitutional provision, had been reached and exceeded by said county, in this, to wit:

"First. That at the several times and dates at which said several warrants were issued, or attempted to be issued, the total value of the taxable property, real and personal, of said county of Chaffee, was not less than one million of dollars, but was of the value, as assessed in pursuance of the laws of the state of Colorado, as follows, to wit: For the fiscal year ending November 30th, 1884, $2,302,432 ; for the fiscal year ending November 30th, 1885, $2,566,055 ; for the fiscal year ending November 30th, 1886, $2,400,508.

"Second. That at the several times and dates on which the said warrants designated in plaintiff's complaint, and each of them, were issued, and at the time the debts, in payment for which said warrants were issued, were contracted, the aggregate amount of indebtedness of said county, exclusive of debts contracted before the adoption of the constitution of the state of Colorado, exceeded the amount as limited by said section six (6), article eleven (11), of the constitution of the state of Colorado.

"That the total indebtedness of said county, for all purposes, exclusive of debts contracted before the adoption of the said constitution, at the several times and dates on which said warrants in the complaint mentioned were issued, exceeded the sum of two hundred and fifty thousand dollars. That no part of the debt, in consideration of which said warrants were issued, was incurred by a vote of the taxpayers of said county, and that the issuing of each of said warrants specified in plaintiff's complaint increased the indebtedness of said county in excess of the limit prescribed by the said constitutional provision. That such warrants and each of them, for the reasons aforesaid, are void, and not binding against said Chaffee county."

Third. In legal effect the same as the second.

The fourth special defense in substance tenders the same issues as those made by the special denials of the allegations of the complaint contained in the general answer.

The fifth special defense we do not find it necessary to consider.

A replication was filed denying and traversing the special averments of the answer.

For the purposes of the trial the following stipulation was made: "That the defendant, in its corporate capacity, issued and delivered to the payees in said warrants named the said several warrants in said complaint described, in form set forth in said complaint, and at the time and for the amounts in said complaint stated, and that the said warrants were all drawn upon the road fund of said county of Chaffee, and that the issue of said warrants was authorized by said board of county commissioners, so far as regularity of allowance of account and order of issuance is concerned, and the said warrants were also duly signed by the proper officers of said county and were afterward presented to the county treasurer for payment, and the payment thereof demanded of said treasurer, and the said treasurer thereupon refused to pay the same and indorsed thereon the date of such presentation, and that payment thereof was refused for want of funds, and the said treasurer thereupon registered said warrants in the book of registry for such warrants, in accordance with the law in such cases made and provided, and that the dates of such registration are correctly set forth in said plaintiff's complaint, and that said warrants were afterwards by the payees therein named duly assigned and under the hands of each indorsed to the plaintiff, who is now the owner and holder thereof, and that said indorsments were had and made before the commencement of this action;" and a table showing the condition of the road funds of the county from the 31st day of December, 1883, until the first day of January, 1887, by which it appears that the total credit to said fund between those dates amounted to $59,932.11, and the total debits to $40,752.49, leaving a balance that should be in the treasury or to be accounted for of $19,179.62; also a statement or table showing that the aggregate indebtedness of

the county greatly exceeded the constitutional limit at all
the dates mentioned.

There was also introduced in evidence on the part of the
plaintiff the following extracts from the record of the acts
and proceedings of the board of county commissioners of
the county of the 13th day of May, 1889, certified by the
clerk:

" It is hereby ordered that the treasurer be requested to
use the money in the contingent and road funds in the pay-
ment of warrants outstanding against said funds in the order
in which they have been presented.

" And it is further ordered that the treasurer be requested
to distribute the money to be received and now due from
Lake county on account of judgment as follows: One third
to the contingent fund, one third to the road fund and one
third to the general fund; " and the following resolutions
adopted on the same date: " Whereas Chaffee county is and
has been for some time past financially embarrassed, caused
in part by the issue of warrants and bonds in excess of the
constitutional limit, as construed by the supreme court of
the state in the case of *Seeley v. May*, and

" Whereas: It is the opinion of this board, after inves-
tigating the matter, that at least a portion of said indebted-
ness contracted prior to January 1st, 1886, is legal and
binding and should be paid, and

" Whereas: There is now in the hands of the treasurer
quite a sum of money and evidence of indebtedness to the
credit of the general and road funds, to wit: In the gen-
eral fund $—— and in the road fund $——, as shown by
his report of January 1st, 1886, and

" Whereas: The hands of this board are and have been
practically tied, to the extent that they have been utterly
unable to pay any of the claims against the county since
said decision by the supreme court, and which we recognize
as the law of the state, and

" Whereas: There is now on file a great number of claims
against the county for services rendered and materials fur-

nished which should be paid, as well as provisions made for the actual running expenses of the county in order to prevent anarchy and assist in the enforcement of law and order, and

"Whereas: This board is desirous of providing ways and means for relief, and believing that the action which they are about to take is in accordance with law and justice, it is therefore ordered that the treasurer be and he is hereby instructed to set apart all of the county general and road funds in his hands on the first day of January, 1887, for the payment of the legal indebtedness of those said Chaffee county debts contracted prior to and during the year 1886, up to the time of the rendering of the said decision of the supreme court of the state, said legal indebtedness to be hereafter determined by suits now pending and hereafter brought, or any other means of ascertaining the same. And it is further ordered that he be instructed to open new accounts with the said funds, dated January 3d, 1887, and all revenue from every source collected for said funds on and after said date shall be placed in the new accounts to be used in the payment of warrants hereafter drawn by the board of commissioners in payment for services, fees, materials, etc.

"It is further ordered that all warrants or orders hereafter issued against said general and road funds shall be designated as series 'A,' and number 1. The county hereby assumes to pay all necessary expenses incurred by the county treasurer in the enforcement of the above order:" which was all the testimony in the case. Judgment for the defendants, and that the complaint be dismissed.

Messrs. TELLER & ORAHOOD and Mr. W. D. WRIGHT, for plaintiff in error.

Mr. G. K. HARTENSTEIN, for defendant in error.

REED, J. The defense that the county was indebted in excess of the constitutional limitation, and hence, that the warrants in question were void, cannot, in our judgment,

prevail. The warrants on which suit was brought were drawn upon and payable out of a specific fund, viz.: that created for "Road Purposes." In section 5 of the "Revenue Act," Genl. Statutes, sec. 2816, it is provided, "There shall be levied and assessed upon taxable real and personal property within this state in each year, the following taxes * * * for the support of schools, not less than two, nor more than five mills on the dollar; for road purposes not more than five mills on the dollar," etc. This was re-enacted with some amendments, not necessary to be noticed, (the power to levy and the amount remaining the same) by the legislature of 1885. See Sess. Laws 1885, § 3, p. 318. Second in importance, only, to education, under our common schools system, is the subject of roads and bridges, the welfare and prosperity of a county or community being dependent upon facilities for travel and communication; and it assumes far greater importance in a mountain region where greater obstacles are to be overcome, and where travel is almost impossible except by artificial routes, needing annually great labor, care and attention. Realizing this fact, the legislature wisely provided for a specific fund annually for such purposes, which fund is as specific and sacred for the purposes of its creation as the common school fund, and can no more be diverted and otherwise appropriated by county authorities. It is true, that it is declared in the constitution, art. 9, sec. 2, "The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state," etc., and in sec. 3, that "The public school fund of the state shall forever remain inviolate and intact * * *. No part of this fund, principal or interest, shall ever be transferred to any other fund or used or appropriated, except as herein provided," etc. While there are no such provisions in regard to a special fund for road purposes in the constitution, there is no prohibition. The state constitution is a limitation only of power of the legislature. It is a fundamental

principle that the state legislature has unlimited power, except as restricted by the constitution.

The supreme court of this state, in *People ex rel. Seeley v. Hall*, 8 Colo. 497, said : "Except as limited or controlled by constitutional provisions, the general assembly is omnipotent in relation to municipal corporations within the state. It calls them into being and endows them with whatever powers and privileges they possess. If in its judgment advisable, their existence, even, may at any time be absolutely terminated. In,these and other particulars it bows only to the superior behests of the people expressed in their organic law." And in *Sangamon Co. v. Springfield*, 63 Ill. 66, it was said, "The taxes must be paid into the county treasury, and when there they are under the control of the county, and it must be held responsible for any proportion due to the city, or to any third party. The treasurer is the mere agent, and must obey the authorities of the county. The direction in the act, that when 'the taxes shall be paid into the county treasury, the treasurer shall pay,' etc., imposes an obligation upon the county, on the refusal of the treasurer to comply with the requirement. He is commanded to perform a purely ministerial duty. The liability of the county arises from the fact of having the possession of money which rightfully belongs to another party.

"A county is a public corporation, which exists only for public purposes, connected with the administration of the state government, and may be controlled by the legislature. 2 Kent's Com. 306. Such a corporation, and of course its revenue, is subject to the control of the legislature. County of *Richmond v. County of Lawrence*, 12 Ill. 1.

"When, therefore, the legislature directs the application of the revenue on deposit in the treasury to a particular purpose, or its payment to any party, a duty is imposed and an obligation created upon the county." See also, *Alexander v. People*, 7 Colo. 155 ; *People v. Osborne*, 7 Colo. 605 ; *Ketchum v. City of Buffalo*, 14 N. Y. 367 ; *People v. Flagg*, 46 N. Y. 401.

That the legislature is exercising an acknowledged constitutional power in directing future county revenues to specific purposes, see *People v. Flagg, (supra); Young v. Hall,* 9 Nev. 213; *Esser v. Spaulding,* 17 Mo. 303; *People v. Power,* 25 Ill. 191; *McDonald v. Maddux,* 11 Cal. 187; *McCauley v. Brooks,* 16 Cal. 35.

The legislature, within the legitimate limits of its power, wisely provided for a specific fund to be assessed, levied, collected and applied to road purposes only, and such fund is as specific for that purpose, and as unavailable for other purposes, as the school fund is made by the constitution. It was against this specific fund that the warrants in controversy were drawn.

By the stipulation on file it is shown that the amount of the credits to the road fund in the years 1883 to 1886, both inclusive, exceeded in the aggregate the outstanding warrants and warrants drawn against it, some $19,000, and that in each of the years the available road fund exceeded by quite an amount the warrants drawn. Hence, if the fund had been entirely devoted to the purposes of its creation, and there had been no diversion or misapplication of the fund, it was at all times solvent, and at the end of each fiscal year with money in the treasury to pay all warrants drawn during the year. It is agreed that on Dec. 31, 1883, there were outstanding warrants amounting to $16,926.32. What amount of it had been drawn in the year 1883, and what amount existed prior to that time, we are not shown; but the assets of the fund exceeded all the outstanding warrants over $3,000. At the close of each of the following years the balance to the credit of the fund was much greater. It will be observed by the figures shown in the stipulation that the delinquent tax uncollected on December 31, 1883, was $12,966.39, and that in the following years it remained about $16,000 or over, showing that the collections of former years about equaled the delinquency of each succeeding year, consequently, the fund was at all times solvent and able to respond to the warrants drawn.

It was not contemplated by the legislature, nor expected that there should be at all times money belonging to the fund actually in the treasury to pay all warrants at the time of drawing or presentation, so a system of registry was provided, whereby warrants were to be paid in the order of their presentation.

In *Seeley v. May*, 9 Colo. 404, it is said by the supreme court: "Valid appropriations of its revenue may be made in anticipation of the collection thereof," etc.

The drawing of warrants against a special fund, already provided, and certain to be paid during the fiscal year for their payment, is not the creation of a debt or debts within the constitutional prohibition. The application of a special fund to the purpose of its creation, by the drawing of warrants against such fund, unless the amount drawn during the year exceeds the amount provided for such fund, and supposed to be available, is not the creation of a debt, although it anticipates the revenue to be collected, as they are drawn against existing values,—hence, cannot be classed and regarded as the debt of the county prohibited by the constitution, unless in excess, in some year. of the money provided for their payment during that year. Whether or not warrants so drawn on the special fund, in excess of it, can be classed with the general indebtedness of a county, so as to swell the aggregate and render the warrants void under the constitutional prohibition, we do not find it necessary to determine in this case, but if they could in any case be so considered it would not invalidate all the warrants of that year, but only those drawn after the fund was exhausted, and in excess of it. As it is shown, by the stipulation on file, that in the years from 1883 to 1886 the warrants drawn did not exceed, but were clearly within the fund provided for their payment, none of them could become invalid by reason of the general indebtedness exceeding the limit fixed by the constitution.

II. It is urged in argument, by counsel of defendant in error, that this form of action would not lie. He says,

"Another objection to plaintiff's recovery in this action is, that the warrants are payable out of a particular fund and are not a charge against the county in this action," and a long list of authorities are cited in support of the proposition. The first, and perhaps the only answer necessary to this position, is, that no such question was raised in the court below; it first appears in argument. That the form of action selected was the proper one appears to have been conceded. An answer was put in upon the merits, putting the defense entirely upon other and different grounds, the issues were made up, and the case tried without a question as to the form of action selected.

This is a court of review, not of original jurisdiction. Had the point been raised by proper pleading in the lower court, and the question adjudicated, the finding might be reviewed here; but having been waived, and the propriety of the action conceded, the matter is not before this court. It is now too late to take advantage of matter in abatement of the action. But admitting, for the purposes of argument, that the question can be raised in this court, we are confronted with the following facts and difficulties. Conceding, as we must under the authorities, that where warrants are. drawn upon a special fund and there is money belonging to that fund in the hands of the proper officer, who refuses to pay, mandamus is the proper proceeding, and proof must be made of the ability of the officer to pay, what are the conditions of this case? It is alleged in the complaint that for the years 1883 to 1887 the amount of the road fund was largely in excess of the warrants drawn against it, and that at the beginning of the year 1887 there was, or properly should have been, a large balance belonging to that fund in the hands of the treasurer. These several allegations are all traversed by the answer, are re-asserted in the replication, and the further allegation made, asserting in effect, that a large balance should be in the road fund, and if not there, that the same had been, by the county authorities, diverted and misapplied to other county purposes.

In the stipulation of counsel it is conceded that the warrants in controversy were presented to the treasurer and payment demanded, "*and that payment thereof was refused for want of funds.*" Here is a conclusive and binding agreement entered of record, that there was no money in the road fund for the payment of the warrants. Counsel for plaintiff, knowing this fact in advance, could not be required or expected to proceed by mandamus, which could only be available with the money in the treasury, and upon proof that it was there, and of a refusal to pay. By the figures and abstracts contained in the stipulation it is shown that there should have been a large balance in the treasury to the credit of the road fund. No proof whatever was offered on the part of the defense to explain or show to what use the fund had been applied, and why it was not on hand. *Prima facie* a case was made sustaining the allegations in the complaint that required defendants to rebut. No effort was made to do so. Counsel evidently relied upon the supposed invalidity of the warrants by reason of the county indebtedness exceeding the constitutional limit, and did not think it necessary to interpose other defenses. The figures contained in the stipulation, showing that there should have been a large balance of the special fund in the treasury, and the same document stipulating that there was none, *prima facie*, at least, established the allegations of the complaint of diversion and misapplication of the fund to other purposes by the county officials; while the abstracts from the record of the proceedings of the county commissioners, put in evidence by the plaintiff, show that the county commissioners, by resolutions passed and entered of record, ignore and repudiate the warrants, and open up new accounts and designate arbitrarily the warrants that shall be thereafter paid. All the evidence put in shows the financial affairs of the county to have been inextricably muddled; the warrants drawn upon the special fund repudiated, the money belonging to the fund misapplied, and an illegal and mal-administration of county finances. It is an old maxim " That there is a legal remedy of some kind for

each wrong." As before stated, there being no money in the hands of the treasurer belonging to the special fund, and this fact having been conceded by the stipulation filed, a proceeding by mandamus would have been futile and abortive. And now to hold that this, or some similar action by the creditors of the county against it, through its corporate officers, could not be maintained and a general judgment obtained, would be practically to declare that the plaintiff was remediless and that creditors of a county could in no way enforce just claims if the authorities saw fit to dissipate, divert or misapply special funds provided to pay special warrants.

The action (aside from the equitable part of it that will be hereafter considered), was an action of *indebitatus assumpsit* at common law, and by the code the common law remedy has not been restricted but enlarged. This action will lie for " The breach of all parol or simple contracts, whether verbal or written, or express or implied, for the payment of money." 1 Chit. Pleadg. 112; Stephen on Pleadg. 49; *Curtis v. Fiedler*, 2 Black. 461; *United States v. Russell*, 12 Wall. 623; *Town of Queensbury v. Culver*, 19 Wall. 83; *Barker v. Corey*, 15 Ohio 9.

In Archbold on Pleadings and Evidence, 23 and 24, it is said: " If a man undertake an office or employment, trust or duty, he thereby in contemplation of law, impliedly contracts with those who employ him, to perform that with which he is entrusted, with integrity, diligence and skill; and if he fail so to do it is a breach of contract, for which the party may have his remedy by action on the case or in most cases by action of *assumpsit*." The general rule is, whenever a party has been damnified by the intentional wrongful act, misapplication of money, or by the gross carelessness or culpable negligence of another, an action of *assumpsit* may be maintained; and under the code, abolishing all special forms of action, and only giving one general action, it is clear, that where *prima facie* it was shown that the special fund provided for the payment of the warrants had been illegally withdrawn and appropriated to other pur-

poses by the agents entrusted with the management of the finances, a creditor could not be expected to proceed by a special and extraordinary remedy to secure money that had no existence in a special fund. The action, as brought, was maintainable unless the allegations in the complaint and the proofs offered had been met by proper defenses and proofs, showing no misapplication of the special fund, no breach of duty or maladministration of the fund. See *Stimpson v. Sprague*, 6 Mo. 470 ; *Farwell v. Rockland*, 62 Me. 296.

In *People v. Mayor of N. Y.*, 23 Wend. 685, it was said : " Here is a legal duty enjoined by competent authority, which the corporation is bound to discharge * * * an action on the case or *assumpsit* will lie for a neglect of corporate duty. See also *Ellis v. Henry*, 5 J. J. Marsh. 248 ; *Church v. Mumford*, 11 John. (N. Y.) 479.

In *Board of Supervisors of Sangamon County*, (*supra*,) it was held that *assumpsit* under the common counts could be maintained against a county for money accruing due to the plaintiff under a statute where there was no restriction to any other particular remedy, and that when, by an act of the legislature, the county taxes were apportioned between a county and a city, and the county treasurer refused to pay the city her portion, the money due the city from the county could be recovered in *assumpsit* under the common counts.

In this state, as in the state of Illinois, there is no specific remedy prescribed by the legislature in proceedings of this character, hence, the remedy may be as at common law, except in so far as the common law procedure is modified by the civil code. *Varnum v. Martin*, 15 Pick. 440.

Under the pleadings, the stipulation, and other evidence of plaintiff uncontradicted or explained by the defendant, the court erred in its judgment. It should have been for the plaintiff.

III. By authenticated copies of the records of the proceedings of the county commissioners, put in evidence by the plaintiff, the following appears as of date of January 12, 1887, " And whereas, there is now in the hands of the treas-

urer quite a sum of money and evidence of indebtedness to the credit of the general and road funds, to wit : In the general fund $—— and in the road fund $——, as shown by his report of January 1st, 1886," which is followed by a resolution in regard to the disposition of the fund, etc., as is above copied in the statement of the case.

Here we find, by a resolution of the board passed and entered of record, an admission that there was in the hands of the treasurer " quite a sum of money belonging to the road fund " which had been in the treasury over a year. As was shown by the report of the treasurer of January 1, 1886, to this there was, presumably, to be added the amount collected from January 1, 1886, to January 12, 1887, for on that date the commissioners asserted that the hands of. the board had been tied to such an extent that they had been unable to pay any claims against the county, since the decision of the supreme court in *Seeley v. May.* (Dec. Term, 1885.) Payment of the warrants in controversy having been refused for an alleged want of money, the plaintiff was clearly entitled to equitable relief to the extent of the discovery and accounting asked, under the admissions entered of record and the refusal to pay. If the facts presented upon the trial did not warrant, in the judgment of the court, a judgment in his favor, he was fully entitled to know why his claims had not been paid from money admitted to have been in the treasury,—what disposition had been made of the money belonging to the special fund conceded to have been in the treasury, and such further information, as would, if possible, enable him to enforce his just claims, and collect an unquestioned, just demand. Under our system of practice it is perhaps unnecessary to say that both legal and equitable relief may be granted in the same suit, and upon a proper prayer equitable relief may be granted upon the facts stated in the complaint at law. It is very doubtful if, under our present mode of procedure, a separate and distinct proceeding by bill in equity in aid of an action at law could be maintained. By the " supreme court judicature act " of 1873

(36 & 37 Vict.), consolidating all the superior courts into one tribunal, the distinction between legal and equitable actions was abolished, and the mode of procedure was made similar, if not identical, with that of the code states of America,—permitting all legal and equitable causes of action and defenses to be united in one proceeding. Since the passage of that act it has been held that a purely equitable bill for discovery only could not be maintained, and the relief could only be had by the proper proceeding in the action at law; at the same time it was held " That all the doctrines and rules concerning the subject matter of discovery * * * which had been established by courts of equity were still in force, and control the same matters in the new procedure," and were available to plaintiff and defendant alike. See *Anderson v. Bk. of Brit. Columbia*, L. R. Ch., 2 Div. 644'; *Cashin v. Craddock*, L. R., 2 Ch. Div. 140; *Hoffman v. Pastell*, L. R., 4 Ch. Div. 673, and the same has been frequently held in many code states.

The equitable rule in regard to discovery is " a bill for discovery is proper either when the complainant therein has no other proof than that he expects to elicit by its means from the defendant, or when he needs the matters thus disclosed to supplement and aid other evidence which he furnishes, or whenever the court can fairly suppose that facts and circumstances discovered by means of the bill, can be in any way material to the complainant therein in maintaining his cause of action or defense of a suit." 1 Pom. Eq. Juris. § 191; *Montague v. Dudman*, 2 Ves. 398; *Finch v. Finch*, Id. 492; *March v. Davidson*, 9 Paige (N. Y.) 580; *Many v. Beekman*, Id. 188; *Metler v. Metler*, 4 Greens Ch. (N. J.) 457; *Turner v. Dickenson*, 1 Stockt. Ch. (N. J.) 140; *Peck v. Ashley*, 12 Met. (Mass.) 478; *Hoppock v. Railroad*, 27 N. J. Eq. 286.

The circumstances of this case, the confusion of financial affairs and the peculiar administration shown by the public records of the proceedings of the county commissioners, certainly brought this case within the rule as above stated, and

entitled the plaintiff to full discovery in the premises.   The court erred in refusing to grant and compel the discovery asked.

The judgment should be reversed and cause remanded.

*Reversed.*

BISSELL, J., dissenting.

The algebraic representation of the unknown quantity " x " probably well expresses the value and usefulness of a dissenting opinion in judicial proceedings.   The universality of the custom coupled with the importance of the present inquiry has led to the labor and the possible encumbrance of the reports with this opinion.

I differ radically with my associates both in regard to the law which is applicable to the controversy and in regard to what the proof tends to establish.   The stipulation of facts on which the case was tried is partially quoted in the principal opinion.   It is assumed in it that what is quoted, together with what is stated, supplies the requisite proof to support the case and justify a reversal.   I do not subscribe to that statement.   Supplementing the quotation given in the opinion I now give the balance of the stipulation with reference to the warrants issued and amounts collected according to the terms of the document.

" Delinquent tax due said road fund, December 31st, 1883   .   .   .   .   $12,966.39
Cash on hand   .   .   .   .   .   1,246.32
Tax levy 1883 for road fund   .   .   .   10,953.69

Total   .   .   .   .   $25,166.40
Of the delinquent tax of 1883, the sum of $3,068.85 was up to that time, Dec. 5th, 1883, declared unavailable,   .   .   $3,068.85

$22,097.55

Amount carried forward $22,097.55.

Amount brought forward . . . . $22,097.55
There were outstanding road warrants
    drawn on said road fund    . . $18,926.32
That in 1884, Dec. 31st, the delinquent un-
    paid tax due said road fund was the sum of $16,920.16
Cash on hand    . . . . 247.42
Road tax levied and payable    . . 15,396.18
 

      Total    . . . $32,563.76
Warrants drawn in 1884    . . . $15,318.82
That in 1885, Dec. 31st, the account stood,
    delinquent tax due the fund    . . $16,421.56
Cash on hand    . . . . 3,656.99
Taxes levied due the fund    . . . 12,052.52
 

      Total credit    . . . $32,131.07
Warrants issued, 1885,    . . . 5,992.27
Dec. 31, 1886, the account stood: Delin-
    quent tax due the fund    . . $16,095.58
Cash on hand    . . . . 5,628.21
Taxes levied due the fund    . . . 8,748.71
 

      $30,472.50
Warrants drawn in 1886,    . . $ 1,515.08 "

That in addition to the credits above mentioned, the sum of $1,637.15 was credited to that fund by the board of county commissioners, from moneys collected from Lake county, said credit being given in October, 1886.

Following what is above quoted, there is what is termed a recapitulation of the preceding statement and a further statement as to the assessed valuation of the property of the county for specified years, which includes a statement of the warrants outstanding drawn upon the road fund for the years 1884, 1885 and 1886. These things however are simply a further illustration of what is contained in the statement already quoted, and goes no farther for the purposes of proof than that statement itself. This addition to the statement of

facts contained in the original opinion is simply given for the purpose of supporting the subsequent position which is taken by the writer, substantially that there was no proof whatever that there was any money in the treasury applicable to the payment of the plaintiff's warrants.

It is not deemed expedient to follow the line of argument or the course of reasoning adopted in the opinion of the court, nor to contest by way of illustration or argument any of its positions specifically, other than the one which will be first referred to. The views of the writer will then be expressed upon the general topics necessarily embraced in the case, without any other reference or response to the position taken than that which will necessarily arise from the statement of the views which it is believed ought to control the case. The judgment is not reversed because the evidence which was introduced required the entry of a different or any other judgment than the one dismissing the complaint, nor because upon what was proven the plaintiff should have recovered. In the language of the opinion, the case is reversed because the court " erred in refusing to grant and compel the discovery asked."

I am unable to subscribe to that rule, or yield my assent to the position that the plaintiff was entitled to any discovery or to any equitable relief. Without yielding my assent to the proposition that, upon one cause of action stated in a single complaint and in a single count, the plaintiff may have both legal and equitable relief, when from the facts which he states it is manifest and palpable that his cause of action is one at law, it seems to me very clear that in the present case the plaintiff has neither stated an equitable cause of action, nor an action at law wherein the enforcement of his rights either requires or permits the administration of any equitable relief in any of the forms or ways formerly known to chancery practice. The plaintiff has brought an action upon county warrants which in a limited sense and for the purposes of this discussion may be called commercial paper. The opinion holds that an action of *assumpsit* lies upon this

class of instruments, and that when conceived in the form and under the circumstances where *assumpsit* lay at common law, such an action will be found the appropriate remedy for the establishment of these rights. If that be true, it would appear easily demonstrable that equitable relief could not be granted without appropriate allegations showing a necessity for such procedure. Of these the complaint contains none. It avers the issuance of the warrants, their presentation for payment, and the endorsement not paid for want of funds, avers the levy of taxes for road purposes for the years in question, asserts that there are moneys in the treasury applicable to the payment of those warrants, enough at least to cover the plaintiff's claim, and a diversion of a portion of the fund properly belonging to the road classification to other county purposes. This complaint, which is nothing but a naked statement under the code of a cause of action upon warrants, is followed by one of the most remarkable prayers furnished by the history of code pleadings. First it prays a judgment for so much money ; second, it prays that if for any cause the plaintiff be not entitled to such a judgment an accounting may be taken, and that the county government may be decreed to hold the funds for the plaintiff's use, and be decreed to pay them over as fast as they may be collected, if they be properly appropriable to the payment of plaintiff's claim ; third, it prays that in case a diversion shall be proven that a general judgment may be granted against the county. Of course it is well understood that, under the authorities of *Kayser v. Maugham*, 8 Colo. 232, and *Becker v. Pugh, et al.*, 9 Colo. 589, the prayer of the plaintiff is of no practical importance for the purpose of determining what judgment ought to be rendered. It is referred to, however, to show the legal uncertainty of the pleader in regard to the remedies to which he was entitled, and that it is apparent that there was no equitable relief necessarily incident to his cause of action at law as he had stated it, which he sought to obtain and to which he had a right.

In the first place, from the statement of facts in the case

it is evident that it was not a case wherein the action of account lay either at the common law or in equity. It was utterly impossible for the plaintiff, under well settled equitable rules, to file a bill for an accounting against the board of county commissioners and the treasurer upon the facts stated in his complaint. He holds evidences of indebtedness drawn upon a specific fund. The taxes which the county government might collect and which the treasurer received, were applicable to the payment of the plaintiff's warrants, providing the levy was sufficient for the purpose and he occupied such a position in the order of registration as entitled him to demand the money from the treasurer. There is no question of accounting in the matter so far as the plaintiff is concerned, nor is it one of those difficult accounts upon which a court of equity will sometimes entertain a bill of this description, even though the items are all upon one side. Story's Equity Jurisprudence, §§ 458, 459.

If the plaintiff had no right to an accounting according to his prayer, which is not adjudged by the opinion of the court, then the only equitable relief to which he could in any event have become entitled and that which the court says he had a right to is a discovery. It seems to be tolerably clear under the authorities according to the facts in this case, that the plaintiff was not entitled to that discovery. Without expressing any opinion as to the right to initiate proceedings analogous to those which prevailed in the chancery practice prior to the adoption of the code, where a party appears by his case to be clearly within the declared law upon that subject, it is enough for the purposes of this opinion to hold that the plaintiff failed to bring himself within the well recognized rules relating to that procedure. It is said, with the concurrence of all the writers upon the subject, that to entitle a party to a discovery he must be remediless at law, but for the discovery which he seeks. Story's Equity, § 690.

The bill was always addressed to the defendant from whom the disclosure was sought, and if the facts to be discovered were within the knowledge of any witness the bill did not

lie, nor could it be maintained when the court of law where the proceedings were pending had the means of compelling the disclosure. As was well said in one of the cases cited below: " It was always an exceptional process, confined to the necessity of the case, and when the necessity does not exist there is no room for the practice. It has always been held that when a court of law could enforce the production of documents or any other disclosure required by a party of his adversary, that was a complete answer to a bill of discovery, and now this can be done in all cases more readily and completely than was possible by bill." *Riopelle v. Doellner*, 26 Mich. 102; *Nussbaum et al. v. Heilbron et al.*, 63 Ga. 312; *Blatchley v. Coles*, 6 Colo. 82.

The present case would seem to be brought entirely within the scope and purview of this adjudication. It is entirely clear that the proof essential to the plaintiff's recovery and the only facts which could be within the knowledge of the county officials, to wit: the levy, the amount of taxes collected, the purposes to which the funds were put, the transfer of the moneys if any from one fund to another upon the books of the county, with their ultimate disposition upon warrants drawn by the board, were singly and collectively matters of record, upon the books of the county, open to the inspection of the plaintiff, and producible and provable under proper process in a court of law where the case was to be tried. Gen. Stats. 1883, § 667, p. 285; Code 1887, § 335; *Bean v. The People, ex rel.*, 7 Colo. 200.

It cannot be expected or presumed that the county officers would have any knowledge of the particular facts and conditions surrounding their various funds, except as they might be disclosed by their records and proper books. They were accessible to the plaintiff, did not lie in the knowledge or the conscience of the defendants to be extracted only from them by a bill of discovery, but they were susceptible of proof by documents and books in their custody and which they could be compelled by process to produce. If this be true, and there would seem to be no escape from the conclu-

sion, the judgment ought not to be reversed because the court refused to grant a discovery to which the plaintiff was not entitled.

I do not agree with the court either in regard to the action which ought to be brought or which is properly maintainable under the circumstances, nor as to the scope and effect of the proof offered.

The constitutional limitations upon the power of counties to contract indebtedness have been very clearly outlined and sharply defined by recent adjudications in this state. It is entirely well settled that whenever the limit has been reached no order or warrant drawn upon the general fund of the county is or can become a valid corporate obligation, whether it be issued in satisfaction of a voluntary contract entered into between the commissioners and the creditor, or whether the debt be incurred in the discharge of what may be termed the necessary running expenses of the county under the enactments which provide for the organization and government of such corporate bodies. Since it is shown by the stipulation, which was the only proof offered upon the trial, that Chaffee county was indebted to an extent beyond what was authorized by the constitution as construed by the courts, the plaintiff could not recover without proof that he was the holder of a warrant which was, either in terms or by the statutory condition of its issue a specific appropriation of a paticular fund thereafter to be created or then in existence, and therefore not within the scope of the constitutional inhibition. That orders may be issued which will remain unaffected by the constitutional limitation was expressly adjudicated in one of the opinions which settled the principal doctrine. *The People ex rel. Seeley v. May*, 9 Colo. 80; 404.

It was there decided that there might be a specific assignment of revenues thereafter to accrue. The assignment could be made by an apt writing or it could be effected by a warrant drawn under such circumstances and in such form that the law would give to it the effect of a transfer of the funds to be subsequently collected. And there is in the

terms of the decision in the following language—" it is general in form—it does not purport to be payable from any particular fund or out of the revenue from the taxes of any specified year,"—a manifest purpose to except such warrants from the operation of the rule as declared.    It was an evident recognition of the general plan of the revenue statutes, which permit taxes to be levied for a specified purpose, and which, by the terms of the act authorizing the levy, limit their use and application to the payment of county obligations of a definite and particular character.    Where warrants are drawn in pursuance of this plan, it must be true that they are to be taken as an exception to the expressed constitutional limitation, since they do not amount to the creation of an indebtedness against the county, but are an assignment of an appropriation of a particular fund to which alone the creditor can look for the satisfaction of his claim.    Under the statutes which provide for the administration of the affairs of counties, the various boards are given power within certain limits to levy taxes for the building of roads and bridges. These revenues are to be applied to the purposes named, and those only, and they are to be paid out of the treasury on orders issued by the board, which must designate the fund on which they are drawn, and the purpose to which the money is to be devoted.    The forms prescribed for the levy and collection of the tax, the methods to be pursued in its disbursement, the uses to which the warrants drawn upon the fund can be put, the way in which the tax can be paid, and in which when delinquent it may be collected, all serve to demonstrate that the road fund as such is no part of the general revenue of the county, and although it is to be disbursed by the board which is entrusted with the government of the corporation, it is only subject to disposition by orders which may be drawn on it as such, and that these orders amount to an appropriation by the county authorities.    It is equally apparent that since the statute which authorizes the tax prescribes that the proceeds shall be devoted to road purposes exclusively, and shall be distributed among the

various road districts of the county, it amounts to a legislative appropriation fund, of which the warrant is but the legitimate and appropriate expression. *Ketchum et al. v. City of Buffalo*, 14 N. Y. 356 ; *Moody v. Cass Co.*, 85 Mo. 477 ; *Cooke v. Putnam Co.*, 70 Mo. 668 ; *Mitchell v. Speer*, 39 Ga. 56 ; *Mayor, etc., of Hoboken v. Phinney*, 29 N. J. Law 65 ; *Hospital v. Higgins*, 15 Ill. 185 ; *People, etc., v. Power*, 25 Ill. 187.

The logical result of this rule undoubtedly is that the creditor who holds his order drawn upon the road fund must look to it alone for the satisfaction of his claim, and if there be no moneys in that fund applicable to the payment of his warrant—whether because the warrant is issued for a sum exceeding the amount of the authorized levy, or because the warrants which had been registered before it was presented to the treasury for payment have absorbed all the moneys collected or collectible,—he is remediless in the premises. Such was the express adjudication in Missouri when warrants were drawn upon an internal improvement fund. The legislation in this state upon the subject of roads and highways fully justifies a similar construction. Under these circumstances a warrant drawn upon that fund is not a creation of an indebtedness within the terms of the constitutional provision, but is simply a transfer to the creditor by a body, having authority for the purpose, of so much of the moneys in the treasury belonging thereto as the order may represent. Such legislative appropriation of a portion of the revenues of a county to a definite purpose is entirely within the control of the law makers. The powers and the duties of these public corporations are wholly derived from the legislature and are subordinate to its control. The state is taken to have an interest in the revenues of the county, and because of this interest of the public in these funds the legislature must be taken to have the power to direct their application. According to these views, the defense pleaded and proven by the county of an outstanding indebtedness would not avail to defeat the action.

While the plea that the county was indebted beyond the constitutional limit was no defense to the action, and would be unavailable as a plea in bar in any maintainable proceeding which might hereafter be instituted to enforce the liability of the county upon these warrants, there remain two insurmountable obstacles to the plaintiff's recovery in the present suit. One arises from the form of action which he brought and the relief he prayed—the other comes from a want of that proof necessary to the enforcement of his right, whatever it may be, against the county.

The plaintiff attempted in this proceeding to obtain a money judgment against the county. If recovered, it must necessarily be enforced according to the provisions of the statute concerning judgments against a county. There is the naked inquiry whether an ordinary action for the recovery of money like the old action of *assumpsit* may be brought against the county on these road warrants where there is money in the treasury to which the holder is entitled. On this proposition there is a very general concurrence in the opinions of the court. Some states, like Wisconsin, undoubtedly hold that an action at law may be brought directly against the county to recover the money due upon those instruments which are called warrants in general parlance, though denominated county orders by the statutes. So far as observed, however, those cases which directly adjudicate that proposition construe statutes which contain express provisions permitting money actions to be brought on such instruments against the counties, and the decisions are expressly rested upon these enactments. In the absence of such a statute, the reasoning of those cases which holds that *mandamus* is the appropriate and generally the exclusive remedy is satisfactory and conclusive. All the circumstances essential to entitle a party to *mandamus* concur in this case. There is a specific legal right evidenced by orders issued by the county government, which is possessed of authority to determine the justice of the creditor's claim and his right to a warrant upon the treasury. The

order is drawn upon a specific fund. By the limitations which are expressed in the statute and those necessarily implied from its purpose and general provisions, the payment and the right to payment are dependent on the state of that part of the treasury. This right is still further limited by the action of the creditor in presenting his warrants for registration, for his claim is thus made dependent on the order of the record as well as the condition of the funds. Plainly a general recovery could not be had, and there can be for the creditor no other plain and adequate remedy by action. In an ordinary proceeding by suit under our system to recover money, the only judgment which can be rendered upon anything which possesses any of the elements of a promise to pay, is that the plaintiff do have and recover of the defendant so much money. It is impossible that the judgment specify and direct the treasurer to pay so much money to the plaintiff out of a road fund. It is equally impossible to enter upon the inquiry as to the number of warrants outstanding and the order of their right of precedence as against the plaintiff's claim. These difficulties very naturally suggest the relevancy of the inquiry put in the Ohio case—" in an ordinary civil action could a judgment be rendered which should be payable out of the funds of said school district?" These difficulties then demonstrate that the plaintiff could have no remedy by an action analogous to that of *assumpsit*, and that he could only obtain adequate relief by a writ of *mandamus*. The right to the writ under circumstances like the present is clearly established by the authorities. *The State ex rel. Robertson v. Board of Education*, 27 Ohio St. 96 ; *The People ex rel. McSpedon v. Hawes*, 21 How. Prac. 178 ; *Cass Township v. Dillon*, 16 Ohio St. 38 ; *The State ex rel. v. Buffalo Co.*, 6 Neb. 454 ; *The State ex rel. Van Vliet v. Wilson et al.*, 17 Wis. 709 ; *Commonwealth ex rel. Whelen v. Councils of Pittsburgh*, 88 Pa. St. 66 ; *Klien v. Supervisors*, 54 Miss. 254 ; *Board of Supervisors v. Klien*, 51 Miss. 808 ; *Lake et al. v. Trustees of Williamsburg*, 4

Denio 520; *People ex rel. Conway v. Supervisors*, 68 N. Y. 114.

Although the question has not been directly adjudicated in this state, the right to the remedy has been considered by the supreme court and has been clearly settled by their adjudications. *Board of Co. Comm'rs of Summit Co. v. People ex rel. Hurlburt*, 10 Colo. 14; *Stoddard, Treasurer, v. Benton*, 6 Colo. 508.

It does not appear to me that the question discussed was either decided by the *Traveller's Insurance Company v. Denver (infra)*, nor that it was then before the court for determination. It would seem from the opinion that the right to maintain an action at law against the city of Denver upon warrants drawn upon the sewer fund was questioned by counsel who insisted that the remedy was by *mandamus*. According to the opinion, however, the case seems to have gone off upon other grounds, and to have been rested solely upon the necessity for an averment of moneys in the fund and proof to support it. It would appear impossible to urge the same objection to the maintenance of an action against the city upon its warrants that readily suggest themselves when the legislation concerning the county organization and the creation of a road fund is considered. In the present case the difficulties seem insurmountable and to justify the conclusion that *mandamus* is the only appropriate and adequate remedy.

To hold otherwise would be to enlarge the rights of the holder and give him, under the provisions of the statute relating to the enforcement of judgments against county organizations, a claim upon the general funds of the county to which he was not entitled according to the terms of his contract and the provisions of the statute, and which by necessary construction limited his right of recovery. According to section 527 of the General Statutes, whenever a judgment is rendered against the board or against the county officer no execution is to issue, but a tax is to be levied and collected for its payment as in the case of other county charges, or a

general warrant upon the general funds of the county may be issued to the holder by the board. According to the view hereinbefore expressed with reference to warrants drawn upon the road fund, these are rights which can under no circumstances be acquired by the holder, and which under the law the county government cannot give him. Very cogent reasons for holding that his remedy is not by an action for the recovery of money, but that he must proceed by *mandamus*, where the writ can direct the proper officers of the county to pay to the holder so much money as upon the hearing it may appear he is entitled to receive.

If the plaintiff had chosen the proper remedy the peremptory writ could not have been ordered on the final hearing. It will be observed that this is not and could not be under the circumstances a proceeding to compel the board of county commissioners to levy an authorized tax and apply it when collected to the satisfaction of the warrants which the plaintiff holds. If the action were in all respects regular, it could not go farther than to require the proper officer of the county to apply to the satisfaction of the warrants the proceeds of the taxes collected and in the officer's possession. This could only be done upon both allegation and proof that moneys were in the treasurer's hands properly applicable to the liquidation of the plaintiff's claim. There is a radical failure in both these particulars. According to the decision in *Travellers' Insurance Company v. Denver*, 11 Colo. 434, where the action is brought to recover on warrants drawn upon a special fund of a municipal corporation—it is necessary to allege that there is money in the fund with which to pay the warrant on which the action is brought. According to well established principles, all material allegations in a complaint must be sustained by competent proof, and if the allegation is material the proof is likewise essential. It is quite possible that by construction, if otherwise there were enough in the case to warrant a reversal, the court might hold the allegations with reference to moneys in the road fund sufficient to maintain the action, where an issue is made by answer and

the pleading has not been attacked by demurrer. Assuming that the complaint alleged moneys in the road fund, it must be held that the allegation was not supported by competent and sufficient proof to warrant a recovery.

As stated, the evidence lay in the stipulation of the parties. It nowhere appears in that stipulation that at the time of the institution of the suit, or at the time of rendition of judgment, there was money in the hands of the treasurer belonging to the road fund available for the purposes of paying the plaintiff's warrants. The recital is "payment thereof was refused for want of funds." It was shown that from 1883 to 1886, warrants to the extent of $40,752.49 had been issued by the board. Such being the plaintiff's proof concerning the situation of the warrant account, it must be assumed that these warrants were legitimate claims upon the road fund of Chaffee county, registered in some order under the statute and entitled to be paid by the treasurer. The situation which the plaintiff occupied in that list is not shown and he might have been, according to the proof, the holder of the last registered warrant. If he were in this position, he was not entitled to any relief, since he failed to prove that there was money in the fund sufficient to liquidate the antecedent registered claims. The evidence which he offered upon this subject consisted solely of a statement showing delinquent taxes due and the tax levies made for the various years, comprising the period during which his warrants were issued. This evidence cannot be held to justify a judgment against the county for a specified sum, nor could it be held to warrant the issue of a peremptory writ of *mandamus* to compel the treasurer to pay moneys to the plaintiff, since it neither proves nor tends to prove money in that officer's hands. It was urged in argument that presumptively delinquent taxes were paid and that those levied were collected. Whatever force might be given to that presumption for the purposes of determining the financial condition of the county, it does not constitute such proof of funds in the treasury as

would warrant a court in granting relief to a plaintiff who is charged with the burden of proving his case.

There is nothing whatever contained in the stipulation either in terms or by implication which can be said to amount to an admission by the county that there was at any time within the period mentioned in the stipulation unappropriated moneys in the road fund to which the plaintiff had a right to look for payment, and should it be conceded that by any sort of construction the road fund could at any time have been deemed solvent, it equally appeared that there were outstanding warrants to the extent of the funds in the treasury, and no proof was offered upon which the court could rightfully hold that the plaintiff was entitled to recover from that fund, for he showed nothing concerning the registration of warrants which would sustain a recovery by him.

It is likewise plain that the plaintiff was not entitled to recover upon his allegations that funds had been diverted in such fashion as to entitle him to a general judgment against the county. His allegations in that regard were put in issue, and the only proof, if it can be said to rise to the dignity of evidence, which he offered was a resolution of the board directing the placing of certain moneys in the funds named in the resolution. It is exceedingly doubtful whether for the purpose of a judgment against the county that resolution can be deemed an admission to such an extent as to supply the place of actual proof upon the subject. It is questionable at best whether the board of county commissioners can by such a resolution make an admission upon which a judgment can be entered. Without expressing any definite conclusion upon this subject, however, it is enough for the purposes of this dissenting opinion to say that, even though it were an admission which bound the county, it was not followed by proof of the transfer of any moneys belonging to any fund upon which the plaintiff had any claim to the general funds of the county, whereby a cause of action as for diversion accrued in his favor.

It is manifest that although the defense interposed by the

county was. insufficient to defeat the plaintiff's right to re-
cover, he was not entitled to maintain the. action which. he
brought, nor was the proof which he offered sufficient to en-
title him to any relief, if by amendment or construction the
pleadings could be harmonized with these views concerning
the proper pleadings to be taken to enforce the liability of a
county on orders drawn upon road funds.

The judgment dismissing the plaintiff's bill accords with
the law, and there is no error in the record which warrants its
reversal.

The judgment should be affirmed.

*Reversed.*