Wilson, J.,
delivered the opinion of the court.
This was a proceeding in mandamus originally instituted against Edwin F. Arthur, treasurer of the city of Denver, as defendant; his term of office having expired, Paul J. Sours, his successor was, upon motion in this court substituted as defendant. The action grows out of the construction of a *284 sewer in the Twentieth street sewer district, in the city of Denver, authorized by city ordinance, passed in April, 1882.
It appears that petitioner was the owner of certain warrants, numbered from 164 to 171 inclusive, issued on April 6, 1883, to the sewer contractor and that on April 7,1883, they were presented to the city treasurer and by him respectively indorsed: “No funds. This warrant bears interest from this date at ten per cent per annum. W. M. Bliss, Treas.” It further appears that these warrants were registered by the treasurer and were the first of these sewer district warrants entered upon his register.
Prior to the commencement of these proceedings, which was on August 5,1896, warrants numbered 169,170 and 171 Avere paid in full and a partial payment made upon number 164. It is alleged that since the last payment on the warrants of petitioner, certain moneys had been paid to the defendant on account of assessment upon lots within said sewer district, which Avere applicable and should have been applied to the payment of the warrants drawn against said fund, held by the petitioner, but that defendant unlawfully refused to make such application. It is claimed by petitioner in his complaint that it was the duty of the defendant to pay such warrants in their numerical order. Defendant answered, admitting all of the facts set forth in the petition but alleging that at the time of the issuance of said Avarrants, there was no statute of the state or provision in the charter or ordinance of the city of Denver, whereby he was required to pay any of said warrants in their numerical order or in their registered order, and that acting on the advice of the city attorney, he had paid out a large portion of the funds received by him on account of said sewer taxes on warrants in the order of their presentation to him after the money had been received, regardless of the time of the registration of said warrants, and of their numerical order of issuance. He further alleged that it would be inequitable and unjust for him as city treasurer to be directed to pay said warrants in their numerical order, and thereby give preference to the *285 petitioner over .other bona fide holders of warrants payable out of said fund. It appears that out of the moneys which petitioner claimed should have been applied to the redemption of his warrants, the treasurer had paid warrants numbered 549, 537 and 538, which had been registered on June 7, 1890, seven years after the registration of petitioner’s warrants.
Petitioner applied for a writ of mandamus to compel the application of the money in thé treasurer’s hands to the credit of this sewer fund, to the payment of its warrants and upon final hearing the issues were found in favor of the defendant. Judgment was rendered accordingly, and from this, petitioner appeals.
It will be seen that the question presented for the determination of this court is: What was the duty of the treasurer under the law as to the order of payment of the warrants drawn upon this sewer fund?
It is well settled and must be conceded that the law subsisting at the time when the sewer contract, in pursuance of which these warrants were issued, was entered into, must control. The law existing at the time when a contract is made is a part of it. Bishop on Cont. 439; VonHoffman v. City of Quincy, 4 Wall. 550; Roberts v. Cocke, 28 Gratt. 207.
At the time when the contract was let for the construction of the sewer and also at the time the warrants held by petitioner were issued, an ordinance of the city containing the following sections, was in force:
“Sec. 2. He shall pay from the treasury such sums of moneys as may be ordered by the city council, and the warrants therefor shall be signed by the mayor or presiding officer of the city council, and countersigned by the clerk, and shall state for what purpose the money is appropriated. He shall keep the account of each fund separate and distinct from each other, charging said fund with all payments, and crediting it with all moneys received on account thereof, and upon all warrants payable out of any particular fund there shall be legibly written the name of the fund out of which they are payable.
*286 “ Sec. 3. That whenever any city warrant may be presented for payment to the city treasurer, and there shall be no funds in his hands for the payment of the same, it shall be his duty to register such warrants in a book to be kept by him for that purpose, wherein he shall state the date, number and amount of such warrant, and the name of the person to whom the same is payable, together with the time and date of such presentation. And it shall be the further duty of said city treasurer to indorse upon the face of all warrants so presented to him, as aforesaid, the time and date of such registry.”
Neither the charter nor the ordinance of. the city prescribed the precise order in which the treasurer should pay the city warrants. The duties of the treasurer as prescribed by the charter and by the ordinances are wholly ministerial and in such case it will not be presumed that he has the power to exercise any discretion in the performance of an act unless it plainly appears from the law or ordinance that such was clearly intended.
It would seem that in the absence of any more specific direction it was the intention of the city council, that the treasurer should redeem and pay the warrants in the order of their registration. We believe that this may be safely inferred from the provision of section 3, of the ordinances above cited. The warrants commenced drawing interest as soon as registered and it was certainly to the interest of the municipality that interest should stop as soon as possible.
Ordinarily the debtor is required to seek the creditor if he desires to discharge an obligation, and no place of payment is prescribed therein, but this rule does not prevail as to the warrants or orders of municipal corporations of this character. When, therefore, the holder of a city warrant presents it for payment and this is refused on account of want of funds, and the warrant is registered by the treasurer, he has a right to assume, in the absence of any law or ordinance to the contrary, that his warrant will be paid in the order of his demand for payment, and of its registration. *287 He has been diligent, and has done everything in his power to secure and protect himself in his rights, which ought iñ justice to be superior to those who may secure evidences of indebtedness subsequently issued. The full record of a warrant was kept by the city clerk in the office of its issuance, so that there is a reasonable inference that the lawmaking power must have had some further object in view, by requiring the treasurer to register the warrants when presented for payment and there were no funds in his hands with which to redeem them. This object undoubtedly was the ultimate redemption of the warrants in the order of their registration. Any other construction of the ordinance would tend to seriously impair the credit of the city by making a creditor depend for the satisfaction of his claim solely upon the will and caprice of the treasurer.
There is some contention by defendant that in the absence of a law specifically providing in what order city warrants shall be paid, it is within his discretion to redeem them as he sees fit. The ordinary rule of law is that a debtor can direct the application of payment. In this case, however, the city, not the treasurer, is the debtor, and in the absence of any direction by it, or by the general or special law which controls it, the courts will direct such application as will not be inequitable or unjust to the creditor, and at the same time subserve the best interest of the municipality. It would be contrary to the spirit of the law creating the city and the office of the city treasurer, and to public policy, to permit this to be controlled by the discretion of the treasurer.
In the compiled ordinances of 1884 there are found the following sections of an ordinance, providing for the calling in of city warrants:
“ Section 1. The city treasurer shall, from time to tjme, whenever the necessary funds for the purpose contemplated shall have accumulated in the city treasury, publish a notice in the official newspaper of the city daily for a period of at least one week, calling in for payment such outstanding registered city warrants as he is prepared to pay on presentation, and shall pay the same.
*288 “ Sec. 2. All such outstanding registered city warrants thus called 'in for payment shall be designated in the published notice by number, in the order in which thejr are or have been registered, and shall cease to draw interest from and after the expiration of time specified in such published notice.”
It does not appear when this ordinance was adopted and it may have been subsequent to the making of the sewer contract but as its provisions do not tend to impair the obligation of that contract, to take away from the contractor airy remedy or rights or impose upon him any new burdens, we think that it is applicable to the payment of the warrants issued in pursuance of this contract even though it may have been subsequently passed. Under the terms of this ordinance the treasurer was required to call in for payment, outstanding city warrants in the order of their registration.
It is claimed by defendant that this ordinance last quoted had been repealed before the commencement of these proceedings. This is not shown bjr the record, however, if such was the case, and hence cannot be considered by this court. Be this as it may however, at the time of the passage of the city ordinance, providing for the construction of the sewer in question, at the time when the sewer contract was entered into, and at the time when the warrants in controversy were issued and registered, there was in force a general law of the state which settles the mooted question.
At the legislative session of the general assembly of the state in 1881 there was passed an act with the following title: “ An act to provide for the registration and order of payment of city and town warrants, and to provide a penalty for refusal of treasurer to pay in accordance therewith.” The first two. sections of said act were as follows:
“ Section 1. Every treasurer of any incorporated city or town of this state shall have and keep in his office a book, to be called the registry of city or town orders, wherein shall be entered and set down, at the date of the presentation thereof, and without any interval or blank line between any *289 such entry and the one preceding it, every city or town order, warrant, or other certificate of such town or city indebtedness, at any time presented to such town or city treasurer for payment, whether the same is paid at the time of presentation or not, the number and date of such order or certificate, the amount, the date of presentation, and the name of the person presenting the same, and the particular fund, if any, upon which the order is drawn. Every such registry of city or town orders shall be open at all seasonable hours to the inspection and examination of any person desiring to inspect or examine the same.
“ Sec. 2. Every fund in the hands of any treasurer of any such city or town of this state for disbursement, shall be paid out in the order in which the orders drawn thereon, and payable out of the same, shall be presented for payment.” Session Laws, 1881, p. 252.
We think the language of this act is clearly broad enough to make its provisions applicable to the city of Denver, although it was operating under a special charter.
Especially are we convinced of this, when after examination we find that it does not repeal, change, alter or amend any provision of the city charter or of the city ordinances, and is so manifestly legislation in the interest of the municipality. From this it appears that it was the duty of the treasurer, in the case at bar, to have first applied the money in his hands to the redemption of the warrants held by petitioner. The words presented for payment in the second section clearly refer to the presentation and coincident registration provided for in the first section.
It is suggested in respondent’s brief, that the treasurer should possibly be governed by the provisions of the charter of the city as enacted at the legislative session of 1893 which was in effect at the time the cause of action in this case arose. In this act it was provided in reference to bonds and warrants issued in payment of local improvements that in a certain contingency “ whenever considered prudent by the city treasurer,” he should by advertisement, call in for redemp *290 tion a suitable number of tbe outstanding bonds and warrants for tbe payment of which he had money in his hands and that he should pay them in their numerical order. It would seem that this act applied only to local improvements thereafter made and bonds and warrants in payment therefor subsequently issued.
The concluding section also expressly provides that nothing in the act should effect any right accrued under any act of which it was an amendment. It being our opinion, that at the time of the issuance of the warrants in question, the warrant holders had the right to have them paid in the order of their registration, this act could not take away that right.
It is also contended that even if it should be held that petitioner was entitled to the writ it could only issue to compel the treasurer to make the published notice calling in the warrants entitled to payment. We cannot agree to this. This provision that the treasurer when he had moneys in his hand in any fund applicable to the payment of outstanding warrants drawn thereon should give notice thereof by advertisements was simply intended for the protection of the city. It was a notice required to stop the payment of interest. If however, before advertising, the holder of a warrant which was entitled to be paid, should present it and demand payment, it was the duty of the treasurer to pay it even though he had not issued his published call. The object of the publication would have been fully subserved and in fact the city would have thereby saved the interest which would have accrued during the time of publication.
Under the facts presented in. this case, we think it settled in this jurisdiction, that mandamus was the proper remedy. Beeney v. Irwin, 6 Colo. App. 66; Hockaday v. County Commissioners, 1 Colo. App. 392; Stoddard v. Benton, 6 Colo. 508; Commissioners v. People, 10 Colo. 14; Ins. Co. v. Denver, 11 Colo. 434.
It follows from these views, that upon the facts of the case as admitted and presented by the record, the trial court erred in refusing to grant a peremptory writ of mandamus and *291 that its judgment must be reversed. The defendant in error however, was not a party to this proceeding in the district court. He has been substituted upon motion of plaintiff in error in this court for the original defendant in error who was his predecessor in office, and there is nothing in the record to show that he has ever received or has in his possession any money belonging to the fund in question.
It is therefore ordered that the judgment be reversed and. the cause remanded with instruction to permit the plaintiff in error to make such showing as it may be advised, as to whether or not the defendant in error has in his possession any funds applicable to the payment of petitioner’s warrants in conformity with the views announced in this opinion.

Reversed.